PUBLIX CARS, INC., ET AL., APPELLANTS, V. YELLOW CAB & BAGGAGE COMPANY ET AL., APPELLEES.

FILED FEBRUARY 14, 1936. No. 29356.

*Johnsen, Gross & Crawford, Frost, Hammes & Nimtz* and *F. L. Wolff,* for appellants.

*William H. Wright, Attorney General,* and *Edwin Vail,* for Nebraska State Railway Commission, appellee.

*Brome & Thomas,* for Peoples Cab, Inc., appellee.

*Kennedy, Holland, De Lacy & Svoboda,* for Yellow Cab & Baggage Co., appellee.

Heard before GOSS, C. J., ROSE, GOOD, EBERLY, PAINE and CARTER, JJ., and CHASE, District Judge.

CARTER, J.

This is an appeal from an order of the state railway commission denying the applications of Publix Cars, Inc., Checker Cab Company, Inc., and Safeway Cabs, Inc., for certificates of convenience and necessity to operate taxicabs in the city of Omaha, which were placed in service May 4, 1932, or intended to be placed in operation since that time to take care of existing business needs; and from an order of the commission imposing conditions on the rights of appellants to certificates of convenience and necessity for taxicabs which were in operation on and prior to May 4, 1932.

As a matter of convenience Publix Cars, Inc., Checker Cab Company, Inc., Safeway Cabs, Inc., Yellow Cab & Baggage Company, Peoples Cab, Inc., and Omaha & Council

Bluffs Street Railway Company will be hereinafter referred to as the Publix, Checker, Safeway, Yellow, Peoples, and Street Railway Companies, respectively.

The statutes of this state provide for an appeal to this court from the decision of the railway commission with reference to any rate, classification, rule, charge, order, act, or regulation made or adopted by it upon which there has been a hearing before said commission. Comp. St. 1929, sec. 75-505. The railway commission is clothed with legislative, administrative and judicial powers, and, under our previous holdings, this court has jurisdiction to review the orders and regulations of the commission on appeal.

It appears from the record that on May 4, 1932, the state railway commission assumed jurisdiction to regulate the taxicab business in the city of Omaha. This court subsequently held that taxicab companies are common carriers and that the control and regulation of the operation of taxicabs were vested in the state railway commission. *In re Yellow Cab & Baggage Co.,* 126 Neb. 138, 253 N. W. 80.

The right of the railway commission to require certificates of convenience and necessity is not disputed, this court having held that a regulation adopted by the railway commission requiring taxicab companies to obtain them is not unreasonable or arbitrary. *In re Yellow Cab & Baggage Co., supra.* The grant or denial of a certificate of convenience and necessity by the railway commission is the exercise of an administrative or legislative power. An appeal to this court from such an order involves only the questions whether the railway commission acted within the scope of its authority and whether its order is supported by evidence showing that the order is not unreasonable or arbitrary. Where the action of the railway commission is not unreasonable or arbitrary and does not exceed its powers, this court will not interfere with its findings of fact, because they involve an administrative rather than a judicial question. In the case of *Niagara Falls Power Co. v. Water Power & Control Commission,* 267 N. Y. 265, 196 N. E. 51, this proposition was ably expressed in the follow-

ing language: "As there was evidence before the commission bearing upon the reasonable value or rental value for the use of this water, neither the appellate division nor this court has any power to reconsider the question. No doubt much administrative law has grown up in this state and in this country in response to the development of the public utility resources, but, unless these administrative agencies act arbitrarily and beyond their powers, the courts should not interfere." Also, in *In re Application of Consolidated Freight Co.,* 265 Mich. 340, 251 N. W. 431, the court said:

"Within its proper sphere such a commission often determines issues of fact, which determination renders operative or inoperative, as the case may be, legislative enactments. But, in so functioning, the commission is not exercising a legislative power. In such instances the determinations of fact issues pertain only to the functioning of the commission in its legislative capacity, as an adjunct to the legislature. The policy or wisdom of such action by the commission cannot be reviewed by the courts any more than can the policy or wisdom of a legislative enactment be reviewed by the courts. In short, in so far as the functioning of a commission pertains to the administration of executive or legislative matters, it is not reviewable in this court.

"In the instant case the exact question involved is whether there shall be granted a certificate of public convenience and necessity to appellant under which it may operate as a common carrier over a fixed route within the state of Michigan. Primarily this is clearly a legislative question, not a judicial one. The legislature has properly delegated to the public utilities commission the administrative power of determining whether under the facts disclosed to it the certificate should be granted. In so determining the public utilities commission is acting in its legislative capacity and the factual aspect of such determination is not reviewable in this court. Provisions in Acts Nos. 212 and 312, Pub. Acts 1931, to the contrary are unconstitutional and void.

"However, the commission must act within the law.

Whether it has so acted is subject to review by the courts and such review is strictly in the nature of certiorari where the legal aspect of the commission's determination may be inquired into, but not the factual phases of its determination."

In *United Fuel Gas Co. v. Public Service Commission*, 73 W. Va. 571, 80 S. E. 931, the court said: "But we cannot construe the statute as intended to give us the power and authority to substitute our judgment for that of the commission, in a matter purely legislative or administrative. Such a construction would practically emasculate the statute and rob it and the commission of their proper authority and jurisdiction." It is with this rule in mind, therefore, that we undertake the consideration of the issues raised by this appeal.

To determine whether or not the orders of the commission complained of are valid, it might be well to consider the purposes that were intended to be accomplished when the railway commission was clothed with the power to regulate and control the operation of taxicabs. The situation is aptly expressed by a text-writer, as follows: "The policy of regulation upon which our present public utilities commission plan is based and which tends to do away with competition among public utilities, as they are natural monopolies, is at once the reason and the justification for the holding of our courts that the regulation of an existing system of transportation, which is properly serving a given field or may be required to do so, is to be preferred to competition among several independent systems. In requiring a proper service from a single system for a city or territory, in consideration for protecting it as a monopoly for all the service required and in conserving its resources, no economic waste results and service may be furnished at the minimum cost. The prime object and real purpose of commission control is to secure adequate sustained service for the public at the least possible cost, and to protect and conserve investments already made for this purpose. Experience has demonstrated beyond any question that competition among natural

monopolies is wasteful economically and results finally in insufficient and unsatisfactory service and extravagant rates. Neither the number of the individuals demanding other service nor the question of fares constitutes the entire question, but rather what the proper agency should be to furnish the best service to the public generally and continuously at the least cost. Anything which tends to cripple seriously or destroy an established system of transportation that is necessary to a community is not a convenience and necessity for the public and its introduction would be a handicap rather than a help ultimately in such a field." 3 Pond, Public Utilities (4th ed.) sec. 775.

After assuming the regulation and control of the operation of taxicabs on May 4, 1932, the railway commission on May 9, 1932, promulgated certain regulations applicable to taxicabs being operated in the city of Omaha. Regulation No. 1 (f) provided in part as follows: "The commission shall grant, with or without a hearing, but upon written application therefor, a permit or certificate to each company for the number of taxicabs it or he was lawfully operating as taxicabs on May 4, 1932." The railway commission then determined that the Publix Company had 10 cabs in operation on that date; Checker Company 18; Safeway Company 4; Yellow Company 78; and Peoples Company 10. The railway commission then issued certificates of convenience and necessity to the various cab companies to operate taxicabs as follows: Yellow Company 88; Peoples 10; and in addition thereto certificates for the operation of 6 taxicabs held by other cab companies were permitted to be assigned to the Peoples Company; Checker 18; and Safeway 4. The Publix Company did not acquiesce in the order and appealed to this court. During the pendency of the suit it operated taxicabs in the city of Omaha. After this court ruled adversely to the contentions of Publix Company in the case of *In re Yellow Cab & Baggage Co., supra,* Publix Company made application for certificates of convenience and necessity for 30 cabs, the Safeway for 15, and the Checker for 30. This appeal is based on the refusal of the

railway commission to grant certificates of convenience and necessity for the number of taxicabs prayed for.

On the hearing the railway commission determined that 134 taxicabs were required to satisfy the needs of the city of Omaha for the purpose of taxicab transportation. This finding is based on conflicting evidence and will not be disturbed on appeal in accordance with the rule hereinbefore set forth. For the purpose of this appeal, therefore, it is established that certificates of convenience and necessity for 134 cabs are all that the railway commission could be required to issue on the findings as determined by them.

The evidence shows, however, that the Yellow Company holds a certificate of convenience and necessity for 88 taxicabs, although it operates only 60 to 65 taxicabs and has 78 taxicabs available for service. It would seem, therefore, that the inclusion of the 88 taxicabs of the Yellow Company in the 134 taxicabs to be granted certificates to supply the taxicab needs of the city of Omaha would necessarily result in a shortage of taxicabs to the same extent, as the whole of the 88 Yellow Company cabs was not being used. The fact that the Yellow Company was operating only 60 to 65 cabs instead of 88, for which it holds a certificate of convenience and necessity, clearly shows, under the findings of fact made by the railway commission, that the taxicab needs of the city of Omaha would require the issuance of additional certificates of convenience and necessity. It cannot seriously be contended that, if the taxicab requirement of the city of Omaha is 134 taxicabs, the Yellow Company, or any other cab company, may be permitted by the arbitrary action of the railway commission to hold certificates of convenience and necessity for taxicabs that it is not using and permit the taxicab-hiring public in the city of Omaha to suffer because thereof. If the taxicab business in Omaha requires 134 cabs to handle the business satisfactorily, and the railway commission has so found, the public demand should be met by having that many taxicabs in actual operation for that purpose. If one cab company does not have the necessary units to provide the service required

of it, or refuses to provide such service, necessarily the applications of others to provide it should be considered and not arbitrarily denied.

It is not the province of this court to try this case *de novo* or to substitute its judgment for that of the railway commission. The matter of the issuance of certificates of convenience and necessity rests entirely with the railway commission. Their issuance is based on findings of fact made after a hearing. Many factors should be considered by them in arriving at a proper conclusion. It must be borne in mind that it is not the policy of the law in the regulation and control of public utilities to promote competition between common carriers as a means of providing service to the public. The policy is that through regulation of an established carrier or carriers occupying a given field and protecting it from competition it may be able to serve the public more efficiently and at a more reasonable rate than would be the case if other competing businesses were authorized to serve the public in the same territory. This does not mean that, in assuming the regulation and control of common carriers already operating, the railway commission may arbitrarily turn the business to one carrier and thereby destroy the property interests of the others. It is the duty of the railway commission to control and regulate public utilities that are considered as natural monopolies, but it is not its province to create such monopolies by its own arbitrary action. The rule undoubtedly is that existing carriers shall receive a fair measure of protection against ruinous competition. Where existing carriers can serve the public efficiently, the railway commission undoubtedly has the power to deny the application of a new carrier to operate. The fact that the taxicab trade may desire to patronize one carrier and not another is not a controlling feature. The public, and not individuals, is to be most considered. Under this theory, certificates of convenience and necessity should be granted, if any are to be granted, to existing carriers if they are able to show their ability to furnish the required service to the public, on the

theory that existing investments should first be protected, everything else being substantially equal. We assume that the railway commission, in determining that 134 taxicabs were necessary to meet the taxicab needs of the people of Omaha, considered the service, investment and the ability of the Street Railway Company to give the same service, and properly so. Likewise, the investment, existing service and the ability to render the additional service required are factors that cannot be overlooked when existing cab companies apply for certificates of convenience and necessity. To permit one cab company to hold a certificate of convenience and necessity on cabs that it is not operating, when other existing cab companies have shown by evidence a willingness and ability to provide the service, amounts, in our judgment, to arbitrary and discriminatory action on the part of the railway commission. We therefore conclude that the order of the commission, under the peculiar circumstances of this case, in refusing to grant additional certificates of convenience and necessity to the appellants, or some of them, was arbitrary and cannot be sustained.

The appellants next complain of the action of the railway commission in imposing conditions and limitations on the issuance of certificates of convenience and necessity on taxicabs operated by them on and prior to May 4, 1932. Under the regulations of the railway commission promulgated on May 9, 1932, for the control and regulation of taxicabs in the city of Omaha, it was provided in effect that a certificate of convenience and necessity should be issued to each cab company for the number of taxicabs it was lawfully operating on May 4, 1932, as a matter of form. The record indicates that this regulation is still in force and necessarily the commission should comply therewith and issue the certificates to the cab companies for the taxicabs they had in operation on that date without requiring compliance with arbitrary conditions precedent thereto.

Complaint is also made of the acts of the railway commission in refusing to issue additional certificates of convenience and necessity to the Publix Company for the rea-

son that the taxicabs were "driver-owned," as distinguished from "company-owned," vehicles. We have searched the regulations promulgated by the railway commission and have been unable to find any regulation requiring a taxicab to be company owned, as a condition precedent to the issuance of a certificate of convenience and necessity. Since no such regulation has been promulgated, the railway commission is without the present authority to require it. The question as to whether such a regulation, if adopted, would be unreasonable and arbitrary is not therefore before the court at this time.

There can be no question, however, that an applicant for a certificate of public convenience and necessity, claiming to be a common carrier, may be required to have such an interest in the taxicabs to be operated under the certificate that they are subject to the control of the applicant, otherwise the regulations and orders of the railway commission directed to the applicant would be ineffective as to the taxicabs not under the applicant's control and the interests of the public could not be protected. It appears from the record, however, that the president of the Publix Company desired the certificate of convenience and necessity in the name of the Publix Company for the "driver-owned" cabs in question and agreed to accept the condition of the railway commission that they be company owned. Without passing upon its reasonableness, we conclude that the Publix Company is not in a position to urge the unreasonableness of an imposed condition that it invited the railway commission to make by agreeing to comply with it if made. The Publix Company as a common carrier must have legal control of the cabs for which it seeks a certificate of convenience and necessity or the certificate should not be granted. The interest of the Publix Company in the cabs proposed to be used being in question, the offer to comply with the condition, if imposed, precludes a review by this court, the evidence under such a situation being sufficient to sustain the reasonableness of the order.

Complaint is further made by appellant Checker Com-

pany of a requirement that it change its color scheme on its taxicabs in service on May 4, 1932, as a condition precedent to the issuance of certificates of convenience and necessity to which it was entitled as a matter of course, under the provisions of regulation No. 1 (f). It appears from the record that the Yellow Company, in its objections to the issuance of any certificates of convenience and necessity to the Checker Company, contended that the color scheme it was then using on its taxicabs trenched upon the color scheme used by the Yellow Company on its cabs. That the claimed infringement had existed long prior to the date that the regulation and control of taxicabs had been assumed by the railway commission is amply borne out by the record. It is also undisputed that litigation had never arisen over this controversial matter. It appears to us that, the power of the railway commission to control and regulate the taxicab business in Omaha not having been invoked until long after this controversy arose, it would amount to arbitrary action on the part of the railway commission to attempt to decide a matter that is ordinarily for the courts, and to secure its enforcement by refusing to issue certificates of convenience and necessity unless it was complied with. The record does not show an order of the commission requiring a change of color scheme on the taxicabs of the Checker Company issued after a hearing, and from which the Checker Company could have perfected an appeal to have the legality and reasonableness of the order tested. We are constrained to hold that conditions precedent to the issuance of a certificate of convenience and necessity, regulatory in their nature, that are not based upon a regulation or order of the commission regularly made, are arbitrary and discriminatory and of no force and effect.

We concede that a negative order of the railway commission is not ordinarily subject to review on appeal. But where it appears, as in the case at bar, that the purported negative order of the commission amounts to a finding of the legality of all the certificates of convenience and necessity held by the Yellow Company, under the circumstances

shown in this case, we have come to the conclusion that the order appealed from is not in fact negative in character. The hearing from which the present appeal was taken developed into an investigation of the whole taxicab business in Omaha and was so treated by the commission. The commission in its opinion passed upon many matters that ordinarily would not be raised on applications for additional certificates of convenience and necessity. The railway commission having treated every issue that has arisen in the taxicab business in Omaha as before it, we shall do likewise. Under the circumstances, the denial of the applications of appellants was equivalent to an approval of the certificates already granted. As we have before stated, the order of the railway commission approving the action of the Yellow Company in holding certificates for taxicabs that it is not using, and at the same time treating them as a part of the number of taxicabs required to satisfy the taxicab needs of the city of Omaha, is unreasonable and arbitrary. In determining whether an order is negative, we must look past the form and at the result that is accomplished. We cannot refuse to review an order because it is negative in form, if the real purpose is to accomplish that which otherwise would not be sustained.

We therefore hold that the order of the railway commission complained of is unreasonable and arbitrary in the respects noted in this opinion, which fact imposes upon the railway commission the necessity of such further action, viewed in the light of the necessities of the case presented, as the proper exercise of its powers requires.

JUDGMENT ACCORDINGLY.