IN RE APPLICATION OF MORITZ. ELMER A. MORITZ, APPELLEE, V. TRANSCONTINENTAL BUS LINES, INC., APPELLANT.

43 N. W. 2d 603

Filed July 24, 1950. No. 32777.

*John W. Blood* and *R. E. Powell,* for appellant.

*George A. Skultety, Hubka & Hubka,* and *Albert Detmer,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

WENKE, J.

Elmer A. Moritz, doing business as Fairbury-Lincoln Stage Lines, on November 18, 1948, filed his application with the Nebraska State Railway Commission for a certificate of public convenience and necessity authorizing him to extend his operations as a common carrier by motor vehicle of passengers, baggage of passengers, mail, express, and newspapers over a regular route between Beatrice and Lincoln via U. S. Highway No. 77, serving all intermediate points.

A hearing was had on the application before two examiners. At this hearing Transcontinental Bus Lines, Inc., successor to Santa Fe Trail Transportation Company, appeared and offered evidence in opposition to the

application. After the hearing was completed the examiners made their report to the commission recommending that it authorize the service as to passengers, baggage of passengers, express, and newspapers "as an *ALTERNATE ROUTE* (to a combination of presently authorized regular routes in Applications B-152, Division B, and B-152, Division C), between Beatrice and Lincoln, Nebraska, via US-77," but recommended that the alternate route be restricted as follows: "Applicant shall not transport passengers, baggage of passengers, express and newspapers solely between Beatrice and Lincoln, or solely between points both of which are intermediate thereto, or solely between Beatrice or Lincoln, on the one hand, and, on the other hand, points intermediate between Beatrice and Lincoln." This, in effect, recommended that the authority requested be granted but as a "closed door" operation.

Applicant filed exceptions to the report and on September 6, 1949, the commission sustained his exceptions and granted him a certificate of public convenience and necessity which authorized him to transport passengers, baggage of passengers, mail, express, and newspapers by motor bus over an "Alternate regular route (as an alternate route to presently authorized regular route operations between Superior and Lincoln via Fairbury and Crete and operated in combination with authorized regular route operations under certificates issued in Application No. B-152, Division B and Division C) via US No. 77 between Beatrice and the junction of US No. 77 and Nebr. No. 33, serving all intermediate points."

Transcontinental Bus Lines, Inc., thereupon filed a motion for rehearing and, from the overruling thereof, has appealed. For the purpose of this opinion we shall refer to the appellee as the applicant and to the appellant as the objector.

The over-all effect of the objector's contention is that the evidence adduced at the hearing does not warrant the commission's issuance of a certificate of public conven-

ience and necessity to the applicant which permits him to directly compete with it for local business between Beatrice and Lincoln and points intermediate. That is, if the authority asked for by applicant to operate between Beatrice and Lincoln is granted that it should be limited to a "closed door" operation.

Section 75-230, R. R. S. 1943, so far as here material, provides: "* * * a certificate shall be issued to any qualified applicant therefor, authorizing the whole or any part of the operations covered by the application, if it is found * * * that the proposed service, to the extent to be authorized by the certificate, is or will be required by the present or future public convenience and necessity; * * *."

We have held: "It is elementary that the grant or refusal of a certificate of convenience and necessity in such cases is within the constitutional and legislative authority of the Nebraska State Railway Commission. In Effenberger v. Marconnit, 135 Neb. 558, 283 N. W. 223, it was said: 'We necessarily conclude that a certificate of convenience and necessity is in the nature of a permit or license and that it is not property in any legal or constitutional sense. It is a mere license that can be amended or revoked by the power authorized to issue it. Such being the case, it is personal in its character, is not transferable, and does not pass by succession. It is purely a regulatory measure that can vest no property right in the holder. This being true, the railway commission has the sole power to grant, amend, deny, revoke or transfer a certificate of convenience and necessity.'" Moritz v. State Railway Commission, 147 Neb. 400, 23 N. W. 2d 545.

When an application is made to the commission under section 75-230, R. R. S. 1943, for a certificate authorizing the operation covered by the application the burden of proof at the hearing thereon is upon the applicant to show that the conditions therein required for the granting of the application exist, that is, that the applicant is

fit, willing, and able to perform the service proposed and to conform to the provisions of sections 75-222 to 75-250, R. R. S. 1943, and the requirements, rules, and regulations of the Nebraska State Railway Commission thereunder and that the proposed service is or will be required by the present or future public convenience and necessity.

"In determining the issue of public convenience and necessity, the controlling questions are whether an operation will serve a useful purpose responsive to a public demand or need; whether this purpose can or will be served as well by existing carriers; and whether it can be served by applicant in a specified operation without endangering or impairing the operations of existing carriers contrary to the public interest." Chief Refrigerator Truck Lines, Inc., 34 M. C. C. 492. See Kenosha Auto Transport Corporation, 7 F. C. C., No. 66.

And as stated in People's Telephone Exchange v. Public Service Commission, 239 Mo. App. 166, 186 S. W. 2d 531, by quoting from the majority report of the commission: " 'Public convenience and necessity requires the availability of service and when that exists and is complete and reasonable and pursuant to law, the regulatory body has a duty to preserve it for public use.' "

We have often held: "On appeal to the supreme court from an order of the Nebraska state railway commission, while acting within its jurisdiction, the question for determination is the sufficiency of the evidence to prove that the order is not unreasonable or arbitrary." In re Application of Chicago, B. & Q. R. R. Co., 138 Neb. 767, 295 N. W. 389. See, also, Publix Cars, Inc. v. Yellow Cab & Baggage Co., 130 Neb. 401, 265 N. W. 234; Furstenberg v. Omaha & C. B. St. Ry. Co., 132 Neb. 562, 272 N. W. 756; Thomson v. State Railway Commission, 143 Neb. 52, 8 N. W. 2d 552; Moritz v. State Railway Commission, *supra*; In re Application of Chicago, B. & Q. R. R. Co., 152 Neb. 367, 41 N. W. 2d 165.

To determine that question there are certain principles

which this court has approved and which must be considered in connection therewith.

"The prime object and real purpose of Nebraska State Railway Commission control is to secure adequate sustained service for the public at minimum cost and to protect and conserve investments already made for that purpose, and in doing so primary consideration must be given to the public rather than to individuals." In re Application of Union P. R. R. Co., 149 Neb. 575, 31 N. W. 2d 552.

In Publix Cars, Inc. v. Yellow Cab & Baggage Co., *supra*, we approved the following from 3 Pond, Public Utilities (4th ed.), § 775, p. 1552: "The policy of regulation upon which our present public utilities commission plan is based and which tends to do away with competition among public utilities, as they are natural monopolies, is at once the reason and the justification for the holding of our courts that the regulation of an existing system of transportation, which is properly serving a given field or may be required to do so, is to be preferred to competition among several independent systems. In requiring a proper service from a single system for a city or territory, in consideration for protecting it as a monopoly for all the service required and in conserving its resources, no economic waste results and service may be furnished at the minimum cost. The prime object and real purpose of commission control is to secure adequate sustained service for the public at the least possible cost, and to protect and conserve investments already made for this purpose. Experience has demonstrated beyond any question that competition among natural monopolies is wasteful economically and results finally in insufficient and unsatisfactory service and extravagant rates. Neither the number of the individuals demanding other service nor the question of fares constitutes the entire question, but rather what the proper agency should be to furnish the best service to the public generally and continuously at the least cost. Anything which tends to

cripple seriously or destroy an established system of transportation that is necessary to a community is not a convenience and necessity for the public and its introduction would be a handicap rather than a help ultimately in such a field."

As stated in Furstenberg v. Omaha & C. B. St. Ry. Co., *supra*: "Resolution No. 137 of the Nebraska railway commission, the legislative instrument under and by which this appellant makes application for certificate of convenience and necessity, provides: 'While the old adage "Competition is the life of trade" may still be acceptable as applied in private industry, still today it is the general concensus of opinion of both the courts and regulatory bodies that unbridled competition between such public utilities is not only harmful to the industries themselves but also in the end generally inures to the detriment of the general public as well.' "

As stated in In re Application of Effenberger, 150 Neb. 13, 33 N. W. 2d 296:

"Duplicate lines of transportation by competing common carriers are ordinarily incompatible with the public interest. Such a competing line will be authorized only for compelling reasons.

"Where an established common carrier is ready, willing, and able to comply with any reasonable order of the railway commission in providing adequate service to the public in its field, an order denying a certificate of convenience and necessity to a new, competing carrier is not arbitrary. * * *

"The evidence indicates that adequate service can be provided by the established carrier. Clearly, it has the first right to so do in the manner and by the means which the railway commission might prescribe. If the established carrier failed in its duty or refused to comply with the orders of the commission with respect thereto, the railway commission might then be obliged to favorably consider applications of others to perform the service. The whole theory of commission control is to eliminate

unbridled competition between common carriers when it will result in higher costs to the public. Competitive routes will ordinarily be authorized only where the existing carrier refuses or has failed to provide adequate service upon the order of the railway commission. Where the evidence does not show that such a situation exists, the established carrier may properly resist invasion of its field before the commission." See, also, Moritz v. State Railway Commission, *supra;* and In re Application of Chicago, B. & Q. R. R. Co., 138 Neb. 767, 295 N. W. 389.

The history of the original granting of the authority to operate passenger bus service in the territory and over the routes herein involved is fully set out in Moritz v. State Railway Commission, *supra,* released on June 21, 1946, and will not be restated herein. Subsequent thereto, and effective as of November 1, 1946, applicant acquired the authority of Cowsky to operate from Superior and Nelson to Beatrice via Fairbury. Applicant immediately extended his route, which had been from Deshler to Fairbury to Lincoln via Western, Wilber, and Crete, to one from Superior and Nelson to Fairbury and then to Lincoln via Western, Wilber, and Crete. He operates this run on a schedule leaving Superior at 7 a. m., arriving at Fairbury at 9:10 a. m., and then via Western, Wilber, and Crete to Lincoln, arriving there at 11:30 a. m. His return trip leaves Lincoln at 5:30 p. m., arrives at Fairbury at 7:45 p. m., leaves there at 7:55 p. m., and arrives at Superior at 10:10 p. m. He also discontinued the Cowsky run from Superior and Nelson to Beatrice via Fairbury and in place thereof operated a local service twice daily from Fairbury to Beatrice and return. With reference to his schedule from Superior and Nelson to Fairbury and Lincoln via Western, Wilber, and Crete his local bus to Beatrice leaves Fairbury at 10:20 a. m., thus causing any passengers coming from west of Fairbury to wait one hour and ten minutes at Fairbury to take the bus from there to Beatrice. He also

canceled the interline tariff arrangement of Cowsky with the Santa Fe, predecessor of objector, for passengers exchanged at Beatrice for Lincoln and sold only combination fares. This resulted in passengers going to Lincoln via Beatrice paying a higher fare than if they went over applicant's Lincoln bus line through Western, Wilber, and Crete. These changes resulted in the practical elimination of passengers from Fairbury and points west on applicant's schedule going to Lincoln via Beatrice and over objector's bus line.

At the time of the hearing the objector, whose predecessors were the original passenger bus operators in the field over the route from Lincoln to Beatrice and south to the state line via U. S. Highway No. 77, was the only one operating in that field. It was operating five schedules from Lincoln to Beatrice in each direction. Three of these were in through service and two in local service. While there is some evidence that these busses were at times overloaded, thus causing passengers to stand, it appears that such overloading occurred generally on certain schedules over the weekends and on the days immediately before and after holidays. Objector met this situation by using additional busses and, on the whole, the service rendered appears to have been adequate and sufficient to meet the needs of the traveling public and no complaints were made to the objector in regard thereto. In fact, the over-all load factor, especially of the local schedules, hardly seems to be sufficient to successfully meet the cost of the operation thereof as weekday travel is not very heavy. There is also some evidence that the objector's local bus which is scheduled to leave Beatrice at 11:30 a. m. and arrive in Lincoln at 12:35 p. m. is not conveniently scheduled as it does not permit reaching Lincoln in time for lunch. If it should be desirable to have this bus leave earlier in order to meet the needs of the public it can be easily changed by the commission.

But even if such were not true and additional or differ-

ent service was necessary to meet the needs of the traveling public it would, under our holdings, be incumbent upon the commission to give those in the field the first opportunity to supply it.

The method of regulating public utilities in Nebraska is based upon the theory of regulated monopoly rather than competition and, before one carrier is permitted to take the business of another already in the field, it must be shown that the existing carrier is rendering unsatisfactory service and is unable or unwilling to provide adequate transportation facilities and that the operation proposed by the new carrier will better serve the public convenience and necessity.

The objector states it has been and is ready, willing, and able to put on such additional service as the demands of the public require whenever the commission finds it necessary and so directs. We find the commission, under the facts as disclosed by the record, was not justified in granting to applicant the authority to operate a passenger bus service between Beatrice and Lincoln and all points intermediate in direct competition with the objector who was already in the field and that its action in doing so was arbitrary and unreasonable.

The evidence shows that the passenger bus of applicant scheduled from Superior and Nelson to Fairbury and then to Lincoln via Western, Wilber, and Crete is the only bus service east out of Superior and Nelson to Lincoln; that it travels over 37 miles of graveled highway between Fairbury and Wilber; that this graveled highway has steep hills, narrow bridges, and sharp turns and curves; that it does not receive primary attention when blocked by snow, thus causing it to remain impassable for a longer time than the road from Fairbury to Lincoln via Beatrice; that it is dusty when dry, slippery when wet, and when muddy it usually causes delay. As a whole it presents an unsatisfactory route for bus service as it causes many inconveniences and some danger to the traveling public. On the other hand the route from

Fairbury to Lincoln via Beatrice is all hard surfaced and five miles shorter.

The evidence also shows that while there is a bus depot at Beatrice the transfer of passengers takes place outdoors on the street. In bad weather this presents many inconveniences to those traveling. There is no porter service provided and consequently the passengers are required to transfer their own baggage. Also, at times, there are not sufficient seats available on the bus to Lincoln so that passengers who had seats are required to stand. These conditions present serious difficulties to certain types of travelers, such as elderly people, parents with young children, passengers that are in any way physically incapacitated, and those having considerable baggage.

As a general proposition a through service on a comparatively short run is the best and most convenient service. Transfer of passengers and their baggage from one bus to another, particularly where there is no porter service and it is required to be made outdoors, should be eliminated whenever possible, having due regard to proper economy of operation and the rights of existing certificate holders.

We could go into further detail as to reasons why, for the convenience and need of the traveling public from Fairbury and points west on applicant's route, they should be permitted to travel in a through bus from Fairbury to Lincoln via Beatrice over a hard-surfaced road which would not require them to travel over the 37 miles of gravel road from Fairbury to Wilber with its many inconveniences and some danger. But this does not require that such authority be of the nature as authorized by the commission. It is true that applicant would undoubtedly enjoy additional business if he were allowed to operate between Beatrice and Lincoln and intermediate points with open doors, as authorized by the commission, and it would undoubtedly add to the profits of his business. But this would be in direct

competition with and at the expense of the objector who is already in the field over that route.

We find that the evidence justifies the authorization of the alternate route to Lincoln via Beatrice but that it should be a closed door operation between Beatrice and Lincoln and all points intermediate. The order of the commission is reversed and the cause remanded to the commission with directions to modify its authorization of the certificate of public convenience and necessity accordingly.

REVERSED AND REMANDED WITH DIRECTIONS.