In re Application of Edgar. Park L. Edgar, doing
business as Edgar Oil Company, appellee, v.
Wheeler Transport Service, Inc., et al.,
appellants.

58 N. W. 2d 496

Filed May 15, 1953. No. 33243.

*Swenson, Viren & Turner, Neal H. Hilmes,* and *R. E.
Powell,* for appellants.

*Ginsburg & Ginsburg,* for appellee.

Heard before Simmons, C. J., Carter, Messmore,
Yeager, Chappell, Wenke, and Boslaugh, JJ.

Yeager, J.

On June 19, 1951, Edgar Oil Company by Park L.
Edgar, owner, of Ashland, Nebraska, filed an applica-

(1)

tion with the Nebraska State Railway Commission for permission to operate as a motor carrier for hire in intrastate commerce upon the highways of the State of Nebraska and for a certificate of convenience and necessity to so operate. By the application permission was sought to operate motor vehicles for the purpose of transporting refined petroleum products from all refining and distributing points in Nebraska to Ashland, Wilber, DeWitt, Unadilla, and Lincoln, Nebraska. The application was for the purpose of transporting property for the general public for hire.

It was set forth in the application that applicant's proposed service would be in direct competition with the following named motor carriers for hire: Transit, Inc., Herman Oil Transport Co., Pulec Transport, and Wheeler Transportation Service, Inc.

Wheeler Transport Service, Inc., and Charles D. Doher on August 8, 1951, filed a formal protest to the application and asked that it be dismissed.

On December 13, 1951, an examiner for the Nebraska State Railway Commission filed a report in which he recommended that the application be approved in part and to that extent a certificate of convenience and necessity be granted. The details of that report are not of importance herein.

On December 19, 1951, Wheeler Transport Service, Inc., and Charles D. Doher filed exceptions to the examiner's report. On December 22, 1951, Transit, Inc., Mabel C. Herman, doing business as Herman Oil Transport Company, and Ralph Darling, doing business as Darling Transport Service, also filed exceptions to the report.

The Nebraska State Railway Commission thereafter conducted a hearing on the application, the protest, and the exceptions to the examiner's report, and on February 1, 1952, rendered its opinion, its findings, and its order.

By this order the applicant was granted a certificate

of convenience and necessity to transport refined petroleum products in bulk in tank vehicles from the Great Lakes Pipe Line distribution point in Omaha, Nebraska, and points within a 10-mile radius from such point as point of origin to DeWitt, Wilber, and Ashland, Nebraska, as points of destination with return movements of rejected shipments authorized. Permission to move over irregular routes was authorized.

From this order the protesting parties and those excepting to the examiner's report have appealed. For the purposes of this opinion the applicant will be referred to as appellee and the other parties as appellants.

By their assignments of error the appellants substantially say that the order granting the certificate of convenience and necessity is arbitrary, unreasonable, and contrary to law; and that it is not sustained by evidence that public convenience and necessity requires the issuance of a certificate of convenience and necessity for the performance of this service.

Factually, there is little if any controversy involved herein. For some considerable period of time appellee under proper and legal authority was an interstate carrier of the products which he seeks by his application to carry in intrastate commerce. The point of origin of his interstate shipments was in the State of Kansas. The shipments were received there from the Skelly Oil Company for delivery to the named points in Nebraska. The Skelly Oil Company outlet has been moved to Omaha. It therefore has become necessary, if the appellee is to receive these products from the Skelly Oil Company for transportation to the named points in Nebraska, for him to have an intrastate certificate of convenience and necessity from the Nebraska State Railway Commission.

The evidence discloses that these named points in Nebraska are served by other legally authorized motor carriers and if appellee should be refused the permission sought that fact would not deprive the areas of any need-

ed or necessary service. Distributors at these locations desire but do not require the service of the appellee.

It appears that if this certificate of convenience is not issued to appellee he will be deprived of substantial and profitable operations which were formerly carried on under his interstate authority. If it is issued it reasonably appears that he would retain the operation and since the proposed certificate does not limit or restrict operations except as to points of origin, destination, and products to be handled, possibly he would in competition with other carriers increase them.

Under these facts the convenience that would be served by the certificate would be that of the appellee and that of the distributors at the destination points. The only necessity served would be that of the appellee.

Harsh as the rule may appear and in fact be, the Legislature has not seen fit to allow the Nebraska State Railway Commission to recognize this character and quality of convenience and necessity in determining whether or not permission shall be extended for engagement in the business of a common carrier in the State of Nebraska. It has permitted recognition of only public convenience and necessity. This is especially true when other carriers are already in the field.

This court said in In re Application of Canada, 154 Neb. 256, 47 N. W. 2d 507: "A provision of the statute is that as a condition precedent to the issuance of a certificate, the commission shall find that the service to be authorized is or will be required by present or future public convenience and necessity."

In the paragraph from which the foregoing quotation was taken, the following appears: "The question of the adequacy of service of existing carriers is implicit in the issue of whether or not convenience and necessity demand the service of an additional carrier in the field. Obviously the existence of an adequate and satisfactory service by motor carriers already in the area is complete negation of a public need and demand

for added service by another carrier." See, also, In re Application of Moritz, 153 Neb. 206, 43 N. W. 2d 603.

It was also said in In re Application of Canada, *supra:* "The burden was on appellee to show that the operation he proposed was and would be required by the present or future public convenience and necessity." See, also, In re Application of Richling, 154 Neb. 108, 47 N. W. 2d 413; In re Application of Moritz, *supra.*

Instead of the appellee herein sustaining the burden imposed upon him, his evidence indicates quite clearly that the service which his application contemplates can be well performed by other carriers operating in the area.

It must be said therefore that the order of the commission in granting the certificate of convenience and necessity to the appellee was unreasonable, arbitrary, and contrary to law, and it should be and is reversed.

REVERSED.

WENKE, J., dissents.

CARTER, J., dissenting.

For 16 years Park L. Edgar has been engaged in the transportation of petroleum products by motor vehicle under a permit from the Interstate Commerce Commission. This permit authorized Edgar to transport petroleum products from all refining and distributing points in Kansas to Wilber, DeWitt, Lincoln, Ashland, and Unadilla, Nebraska. The origin of the petroleum products transported was, until recently, from the Skelly Oil Company refinery at El Dorado, Kansas. The total gallonage hauled in 1950 is shown to be 2,159,200 gallons and the total gross revenue therefrom was $51,324.55. The applicant owns and operates three tractor units and two trailers in transporting the petroleum products described. No question is raised as to the ability of the applicant, either as to equipment, personnel, or other qualifying conditions, to carry on the business.

A short time prior to August 1951, the Skelly Oil

Company advised Edgar that its outlet at El Dorado, Kansas, would be removed to Omaha, Nebraska, and that the products formerly hauled would have to originate at the new pipe line terminal in Omaha. An application for a certificate of convenience and necessity was made to the Nebraska State Railway Commission in order that Edgar could continue to serve his customers as he had in the past. The Nebraska State Railway Commission granted the application "From the Great Lakes Pipe Line distribution point in Omaha, Nebraska; and points and places within a 10-mile radius of such point, as points of origin, to DeWitt, Wilber and Ashland, Nebraska, as points of destination, with return movements of rejected shipments authorized, over irregular routes." This court reverses the order of the commission on the theory that if a certificate-holder in the field can perform the service, an order of the commission granting a certificate of convenience and necessity is, under all circumstances, unreasonable, arbitrary, and contrary to law. I do not agree that this is the law.

There are cases where the public interest requires that common carriers in the field be protected against competition. This rule applies particularly to public utilities which are natural monopolies such as were involved in Furstenberg v. Omaha & C. B. St. Ry. Co., 132 Neb. 562, 272 N. W. 756, and In re Application of Effenberger, 150 Neb. 13, 33 N. W. 2d 296. The underlying principle in these cases is that competition among natural monopolies is wasteful economically and results finally in insufficient and unsatisfactory service and extravagant rates. It is required to furnish service in unprofitable areas as well as in the lush areas of the city. A new competitor under such circumstances will not ordinarily be permitted to skim off the cream of the business while the existing transportation system is required to render over-all service to the city as a whole at rates fixed by the railway commission. It is noteworthy that these cases were affirmances of findings by the Nebraska State

Railway Commission, the constitutional body having original jurisdiction over the subject matter.

It is my contention, however, that truck and bus lines are not natural monopolies and, as such, are not entitled to so favorable a position as the holding of the majority gives them.

I point out that the state railway commission was created by constitutional provision. The powers and duties of the commission include the regulation of rates, service, and general control of common carriers. Art. IV, § 20, Constitution. These powers are exclusive and self-executing except as the Legislature may implement them by statute. This necessarily means that the Constitution has lodged great discretionary powers in the commission, except to the extent that the Legislature sees fit to change the manner of their administration. The Legislature has provided that all common carriers shall obtain a certificate of convenience and necessity before they may operate upon the highways of this state. The statute provides "that the proposed service, to the extent to be authorized by the certificate, is or will be required by the present or future public convenience and necessity; * * *." § 75-230, R. R. S. 1943.

Motor carriers were subjected to control and regulation by the railway commission in 1937. The declaration of policy contained in the act recites these pertinent provisions: "It is hereby declared to be the policy of the Legislature to (1) regulate transportation by motor carriers in intrastate commerce upon the public highways of Nebraska in such manner as to recognize and preserve the inherent advantages of, and foster sound economic conditions in, such transportation and among such carriers, in the public interest; (2) promote adequate, economical and efficient service by motor carriers, and reasonable charges therefor, without unjust discrimination, undue preferences or advantages, and unfair or destructive competitive practices; * * * and (6) cooperate with the Interstate Commerce Commission in

the administration and enforcement of the federal 'Motor Carrier. Act, 1935,' approved by the President on August 9, 1935. * * *." § 75-222, R. R. S. 1943.

The purpose of the Nebraska Motor Carrier Act was regulation for the public interest. Its purpose was not to stifle legitimate competition but to foster it. Its purpose was not to create monopolies in the transportation industry but to eliminate discrimination, undue preferences or advantages, and unfair or destructive competitive practices. Legitimate competition is a normal attribute of our free enterprise system. It must be permitted to exist and the law contemplates that it shall. When we assume that new licenses are precluded under any and all circumstances as a matter of law, whenever there is a willing and able operator in the field, we are in effect granting a monopoly to the first occupant without fear of competition.

By a series of cases this court has by a process of gradual encroachment arrogated unto itself, under the guise of statutory interpretation, the determination of what constitutes the public interest in this type of case. I shall cite only two that indicate the trend of our decisions: In re Application of Moritz, 153 Neb. 206, 43 N. W. 2d 603; In re Application of Canada, 154 Neb. 256, 47 N. W. 2d 507. The rule as to natural monopolies, where the public interest required the restraint or elimination of competition, has been erroneously applied to this type of case. The court completely overlooks the fact that it is the public interest and not the protection of carriers in the field that constitutes the fundamental basis for commission regulation and control. The determination of the public interest is a legislative question that has been lodged with the commission and not this court. In each of the foregoing cases the findings of the commission on the matter of the public interest have been reversed and the court has substituted its judgment for that of the commission.

What public interest requires that these interveners

be first given an opportunity to carry the petroleum products formerly hauled by Edgar? He is taking none of their business and proposes to haul only that which he has transported for 16 years. What public interest requires this court to declare, contrary to the findings of the commission, that the business of Edgar must be completely destroyed by the order of this court? Since when have courts been authorized to enter into the legislative field and perform purely legislative functions in the stead of the body to which those functions are given by the Constitution? A rule of this court is cited by the majority which holds to the effect that a certificate of convenience and necessity cannot be issued unless there is a preliminary finding that the carriers occupying the field are unable to perform the needed service. What statute or constitutional provision so limits the power of the commission or confers any such power upon this court to enter into the regulatory field and destroy the business of a citizen who has violated no law or regulation? The railway commission having determined that it was in the public interest to issue the certificate of convenience and necessity, admittedly in a field within its jurisdiction and upon evidence offered at a public hearing, I submit that this court has no authority to intervene.

The only statute that could possibly limit the commission is section 75-230, R. R. S. 1943. Its context does not provide the conditions precedent which this court says it contains. The statute leaves it to the commission to determine the question of public interest. The announced rule is of judicial origin. It was not one imposed by the commission or the Legislature. It is clearly not within the contemplation of the constitutional provision or of legislation on the subject. As such it is nothing more than judicial legislation which deprives the commission of its plain function to determine the public interest in this field. Similar provisions appear in the motor carrier acts of other jurisdictions including

the Federal Motor Carrier Act. There is not a decision among these jurisdictions which sustains the interpretation of section 75-230, R. R. S. 1943, as made by this court. I submit that they are to the contrary.

In United States v. Detroit & Cleveland Navigation Co., 326 U. S. 236, 66 S. Ct. 75, 90 L. Ed. 38, where an identical provision was involved, the court said: "If the Commission were required to deny these applications unless it found an actual inability on the part of existing carriers to acquire the facilities necessary for future transportation needs, a limitation would be imposed on the power of the Commission which is not found in the Act. The Commission is the guardian of the public interest in determining whether certificates of convenience and necessity shall be granted. For the performance of that function the Commission has been entrusted with a wide range of discretionary authority."

In Lang Transportation Corp. v. United States, 75 F. Supp. 915, the court in dealing with this subject aptly said: "* * * the Lang Transportation Corporation takes the position that the Commission had consistently followed the principle that, in the absence of evidence of specific deficiencies in existing service, or of a showing of benefits from a new service, existing carriers should be accorded the right to transport all traffic which they can handle adequately, efficiently and economically in the territory served by them; but this line of reasoning is unsound and an adherence thereto would forever stifle healthy competition. * * * it was clearly proper for that expert body in the case at bar, to exercise its discretion and judgment and come to its conclusion, instead of adopting the arbitrary rule that an applicant should never be permitted to institute new service unless existing carriers already in the field had first been accorded an opportunity to furnish such additional service themselves. * * * It is clear that under Federal law the carriers first in the field within a particular area do not enjoy legal protection against competition subsequently

arising. The Interstate Commerce Commission has power to authorize any number of different carriers to operate within the same territory. * * * It has been expressly held that the Commission may authorize new service for the very purpose of providing the public with the benefits of competition. * * * Moreover, it has been pointed out that 'one of the weapons in the Commission's arsenal is the right to authorize competition,' and that there is 'no merit in the contention that if additional service is required the Commission must impose the duty of supplying such additional service upon existing carriers.' * * * An increase in competition is not a reason for denying the Commission's authority to issue a certificate. * * * 'This case precludes any suggestion that carriers initially in a field are immune against additional and competitive carriers in the face of public convenience and necessity. * * *.' "

In Interstate Commerce Commission v. Parker, 326 U. S. 60, 65 S. Ct. 1490, 89 L. Ed. 2051, the court aptly said: "In protestants' view a certificate of convenience and necessity should not be granted to railroads for motor truck operation when existing motor carriers are capable of rendering the same service. * * * Since, however, on adequate evidence the Commission found that the motor service sought was of a different character from the existing motor service and not directly competitive or unduly prejudicial to the already certificated motor carriers, * * * we hold that the Commission had statutory authority and administrative discretion to order the certificate to issue. * * * Where that improvement depends in the Commission's judgment upon a unified and limited rail-truck operation which is found not 'unduly prejudicial' to motor carrier operations, the Commission may authorize the certificate even though the existing carriers might arrange to furnish successfully the projected service. * * * It must be expected, however, that the Commission will be as alert to perform its duty in protecting the public in the maintenance

of an efficient motor transportation system as it is in protecting that same public in the successful operation of its rail system. The Commission is trusted by Congress to guard against the danger of the development of a transportation monopoly."

The following language from United States v. Pierce Auto Freight Lines, Inc., 327 U. S. 515, 66 S. Ct. 687, 90 L. Ed. 821, is particularly applicable: "We think the court misconceived not only the effects of the Commission's action in these cases but also its own function. It is not true, as the opinion stated, that '* * * the courts must in a litigated case, be the arbiters of the paramount public interest.' This is rather the business of the Commission, made such by the very terms of the statute. The function of the reviewing court is much more restricted. It is limited to ascertaining whether there is warrant in the law and the facts for what the Commission has done. Unless in some specific respect there has been prejudicial departure from requirements of the law or abuse of the Commission's discretion, the reviewing court is without authority to intervene. It cannot substitute its own view concerning what should be done, whether with reference to competitive considerations or others, for the Commission's judgment upon matters committed to its determination, if that has support in the record and the applicable law."

In Motor Transport Co. v. Public Service Commission (Wis.), 56 N. W. 2d 548, the court in dealing with this subject under statutes providing that the commission shall "prevent unnecessary duplication of service" and in granting a certificate that it "shall take into consideration existing transportation facilities in the territory proposed to be served, including common and contract motor carriers * * *", said, as stated in the syllabus: "Whether public convenience or necessity will be better served by licensing additional common motor carrier or by permitting those already licensed to extend their facilities to absorb demand for service is question for

Public Service Commission rather than court, and commission may authorize certificate even though existing carriers might arrange to furnish successfully the projected service."

I submit that the law generally as it applies to situations of this kind is correctly stated in the foregoing cases. Their logic is unanswerable and their reasoning is consistent with an economy based on the free enterprise system. Legitimate competition should not be stifled except when the public interest requires that it be done and, under the Constitution and statutes of this state, it is the commission and not the court that determines the public interest in this field. I submit that Edgar is not a newcomer to the field. It is true that his point of origin has been changed from Kansas to Nebraska, but the territory that he proposes to serve is the same that he has served for the past 16 years. The public interest surely requires, as the commission found, that he should be permitted to continue to do so. What public interest requires that he should not? Interveners are not injured because Edgar is performing a service which they have never performed, for he has performed it for 16 years himself. Does the public interest demand the destruction of Edgar's business and that petroleum carriers in Omaha, who are now in the field, be given a monopoly on all petroleum hauling originating at that point? I contend that the public interest requires no such result. In any event, the question of public interest is peculiarly for the commission to determine. This it has done, and I respectfully contend that this court has no right, although it may assume the power to do so, to set itself up as the guardian of the public interest in this field. The court assumes that carriers in the field must be permitted to perform the service if they are able to do so when this is simply one of several factors which the commission may consider in arriving at a decision. Where the applicant has been performing the service in a satisfactory man-

ner, without violating any statute or regulation, and where the public interest does not require that the service be performed by carriers in the field, the basis for the issuance of a certificate of convenience and necessity by the commission clearly exists. The commission acted within the scope of the authority conferred upon it after a hearing of the evidence. Its order is not therefore arbitrary and unreasonable, and therefore not within the authority of this court to reverse.

I am in full accord, of course, with the theory of the division of powers of government. This includes the conception that the courts are required to interpret the law and are charged with the duty of keeping the branches of government within their respective spheres. This duty not only requires this court to restrain the legislative and executive branches, but it requires the judicial branch to restrain itself that it may not encroach upon powers that are reposed elsewhere. It is not sound argument to say that an asserted power is judicial in its nature merely because the Legislature has not undertaken to restrain it. The Legislature is not a House of Lords charged, as in England, with the duty of reviewing judicial pronouncements. But the situation becomes more serious still when we consider the fact that an unlawful encroachment of power can be justified in the second instance with just as much semblance of correctness as in the first. But even if such a course would be effective as a restraint, it could not serve to do justice to the applicant Edgar. His business will have been destroyed and the petroleum carrier monopoly, hauling with Omaha as its point of origin, will be further entrenched in a corresponding degree.

The foregoing states no new principles. They have been recognized and applied by this court. We have recited the dangers of encroachment by the court into the field of common carrier regulation and control in a case which is most prophetic and meaningful. We said:

"The grant or denial of a certificate of convenience and necessity is the exercise of an administrative or legislative power as distinguished from judicial power. On an appeal to the supreme court from an order of the railway commission administrative or legislative in nature, the only questions to be determined are whether the railway commission acted within the scope of its authority and if the order complained of is reasonable and not arbitrarily made. Where the action of the railway commission is not unreasonable or arbitrary and does not exceed its powers or violate a rule of law, this court will not interfere with its findings of fact for the reason that they involve administrative and legislative rather than judicial questions. * * * The facilities of administrative law with the combination of administrative, legislative, and judicial powers such as the railway commission have been developed by the people of this state and in the country generally for the purpose of providing direct, swiftly-moving, effective, nonpolitical protection of the public. The primary object of the regulation of public utilities by the railway commission is not to establish a monopoly or to guarantee the security of investment in public service corporations, but, first and at all times, to serve the interests of the public. Nothing is more injurious to the public from every standpoint than a law which is not capable of working out tangible results. Therefore, in its administrative and legislative sphere, if the railway commission acts within the law and not arbitrarily, the courts should not, under the guise of judicial action, interfere and thereby unlawfully usurp administrative and legislative powers constitutionally reposed elsewhere. Courts should review or interfere with administrative and legislative action of the railway commission only so far as is necessary to keep it within its jurisdiction and protect legal and constitutional rights. The policy or wisdom of its action in this field ordinarily cannot be reviewed by the courts except where unlawfully exercised. This court

has no power to regulate public utilities. That power is constitutionally vested in the legislature and the railway commission. 'The Constitution is still recognized as the supreme law of the state and as a limitation of power of all departments and all officials.' * * * This court has no business in the field of making legislation, and it is not an administrative body. Powers conferred upon an appellate court should be construed as intended to include only powers consistent with the discharge of its inherent judicial functions. The intended effective control of public utilities by the railway commission is dependent upon this attitude of the court in that field." Furstenberg v. Omaha & C. B. St. Ry. Co., *supra*.

I am convinced that Chapter 75, R. R. S. 1943, creates no presumption in favor of, or against, either monopoly or competition, and that the commission is free to determine which of the two will best serve the public interest. The statute, section 75-230, R. R. S. 1943, providing for the issuance of certificates of convenience and necessity is not subject to the interpretation which this court puts upon it. Nothing is found therein which makes it a mandatory condition precedent to the issuance of a new license that carriers in the field shall first be given opportunity to perform the service. The announced rule is arbitrary and unreasonable, and has the effect of eliminating legitimate competition as an arm of the commission in procuring an adequately sustained service. Every decision of other jurisdictions that has come to my attention is contrary to the majority holding. It is the public interest which should control the result, a matter that is exclusively for the commission to determine upon evidence. Publix Cars, Inc. v. Yellow Cab & Baggage Co., 130 Neb. 401, 265 N. W. 234. I submit that the evidence amply supports the finding of the commission that Edgar should be granted a certificate of convenience and necessity. Certainly it is not in the public interest to destroy a man's business where no one is injured by his continuing to do that only which he has done over

the years. This court has merely substituted its judgment for that of the commission in a matter that is legislative and administrative in nature and has, in effect, usurped a power reposed solely in the commission and the Legislature. It has placed the commission in a strait jacket in the granting and denying of certificates of convenience and necessity where none is intended. The assertion of the majority that a mandatory condition precedent is contained in section 75-230, R. R. S. 1943, which protects carriers already in the field is not borne out by the language of the act and such an assertion made under the guise of a judicial interpretation of an act in which no basis can be found for it, is nothing more than an unlawful assumption of legislative or administrative power by the court. The majority opinion does not even refer to any statute which requires that the commission give any such recognition to carriers in the field and, in the absence of such a prohibitive statute, the power of the commission is exclusive and self-executing in determining the public interest. The policy or wisdom involved is legislative in character and cannot be reviewed here. Logic and reason, as well as the authorities generally, do not support the majority opinion. If the powers of the commission were viewed in the light of their over-all origin and purpose, the grant of the certificate by the commission would be sustained and there would be no occasion for the court to comment upon the harshness of the rule that it imposes. It is more than harsh. It not only destroys Edgar's business but it destroys all new competition forever. I submit that the order of this court in reversing the findings of the commission is arbitrary and unreasonable, and is not sustained by law or the fundamental principles of justice and right. In my opinion the commission acted within the scope of its powers upon evidence justifying the order which it made. I would affirm the order granting the certificate of convenience and necessity.

CHAPPELL, J., concurs in the dissent.

YEAGER, J. (In response to dissent)

As the writer of the majority opinion in this case I claim the right to respond to the dissenting opinion. I respond to it for the reason that, as I believe, it contains fallacies which if not pointed out would lead readers to a mistaken understanding of the true purport of the majority opinion in its exposition of the law as it is, which law neither the State Railway Commission nor this court may with propriety disregard or nullify.

I have no quarrel with the philosophical phases, as such, of the dissent, but I am stating only a truism recognizable and recognized by all profound students of American law and American government when I say that where in the legal examination of a controversy law and philosophy conflict, the law and not philosophy should prevail. This is a country whose government is of laws.

The provision of law which is basic in the creation and functioning of the State Railway Commission is Article IV, section 20, of the Constitution. It is, to the extent of importance in this case, as follows:

"* * * The powers and duties of such commission shall include the regulation of rates, service and general control of common carriers as the Legislature may provide by law. But, in the absence of specific legislation, the commission shall exercise the powers and perform the duties enumerated in this provision."

The dissent contains the following statement: "These powers are exclusive and self-executing except as the Legislature may implement them by statute." I find no real fault with this statement. I think however that the following carries more comprehensively the meaning of the provision: These powers are designed to be and remain self-executing unless and until the Legislature by action destroys them.

The Legislature did pursuant to the power granted to it by the provision itself destroy to the extent applicable

to the case at bar this self-executing power. It enacted section 75-230, R. R. S. 1943, as follows:

"Subject to section 75-237, a certificate shall be issued to any qualified applicant therefor, authorizing the whole or any part of the operations covered by the application, if it is found that the applicant is fit, willing and able properly to perform the service proposed, and to conform to the provisions of sections 75-222 to 75-250 and the requirements, rules and regulations of the State Railway Commission thereunder, and that the proposed service, to the extent to be authorized by the certificate, is or will be required by the present or future public convenience and necessity; otherwise such application shall be denied."

A portion but not all of this provision has been quoted in the dissent. The last clause of it is not quoted. I think that this clause must be accorded much significance in the determination in this case. It is in specific terms a mandate to the State Railway Commission to deny an application for a certificate unless the facts disclose that the proposed service is or will be required by the present or future *public* convenience and necessity.

In any case where there is a factual dispute as to whether or not the issuance of a certificate will respond to the present or future *public* convenience and necessity the finding of the State Railway Commission and the issuance of a certificate should not be disturbed by this court unless it is abundantly clear that it is unreasonable and arbitrary or contrary to law.

There is no such factual dispute in this case. The record conclusively demonstrates that the certificate here *does not respond* to any requirement of present or future *public* convenience and necessity. It responds only to the *private* convenience of the appellee herein. The record makes it clear that the appellee had certain customers at the locations in question which he desired to continue to serve and also that the customers desired a continuance of his service, but the evidence discloses

affirmatively that in this connection no *public* convenience and necessity is involved.

This being true it appears to me that the unavoidable conclusion is that the issuance of the certificate by the State Railway Commission was violative of the mandate of the statute. It therefore becomes necessary, regardless of what may be said or thought of the harshness of the ruling, for this court to reverse the action of the State Railway Commission.

It is a prerogative of this court when such a question is presented to inquire into the power of the Legislature to act but it may not properly inquire into its wisdom.

The power of the Legislature in this instance is not brought into question. If therefore this legislation is harsh and unwise, correction and alleviation can properly come only from the Legislature.