IN RE APPLICATION OF WEST NEBRASKA EXPRESS, INC.:
WEST NEBRASKA EXPRESS, INC., APPELLEE, v. GEORGE
PIRNIE ET AL., APPELLANTS.

67 N. W. 2d 342

Filed November 26, 1954.   No. 33575.

*J. Max Harding,* for appellants.

*Russell E. Lovell,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

BOSLAUGH, J.

Appellee is a motor carrier of property over regular and irregular routes in Nebraska by authority granted it by the Nebraska State Railway Commission, designated herein commission. It made application to the commission for permission to use State Highway No. 2 from its junction with U. S. Highway No. 30 at Grand Island to Alliance for operating convenience only without change or increase of the points served or the character of the service rendered by it. George Pirnie and James Pirnie, doing business as Arrow Freight Lines of Broken Bow, appeared as interveners in opposition to the application of appellee not by pleading but by participation in the hearing before the commission.

Appellee was issued on March 23, 1951, a consolidated certificate of convenience and necessity by the commission to transport commodities, except those requiring special equipment other than refrigeration, in intrastate commerce by regular route operations. Regular route No. 1 was between Henry and Omaha over U. S. Highway No. 26 to its junction with State Highway No. 19, thence by that highway to Sidney, thence by U. S.

Highway No. 30 to Fremont, and thence by U. S. Highway No. 275 to Omaha. Intermediate points, 12 in number, were permitted to be served. Alliance was an off-route point authorized to be served.

Regular route No. 2 was between Sidney and Scottsbluff by way of U. S. Highway No. 30 to Kimball, and thence by State Highway No. 29 to Scottsbluff. Service was permitted to all intermediate points and to the Sioux Ordnance Depot as an off-route point.

Alternate routes for operating convenience only were between the junction of State Highway No. 19 and U. S. Highway No. 26 and Ogallala over U. S. Highway No. 26, and between the junction of U. S. Highway No. 30 and U. S. Highway No. 30A and Omaha by way of U. S. Highway No. 30A.

Irregular route operations were permitted from points within a 25-mile radius of Morrill on the one hand, and on the other hand, to and from Omaha and points generally in the state on a statewide basis.

Appellee operated in accordance with the authority granted by its certificate with one exception, hereinafter mentioned, until the order of the commission, the basis of this appeal, was made. Until about December 15, 1952, appellee served Alliance from Omaha by using the highways designated in regular route No. 1 of its certificate. A cargo destined for Alliance was usually transported to Scottsbluff and peddled therefrom to Alliance or interlined with Live Wire Transfer of Alliance for delivery to that city. Live Wire Transfer of Alliance had authority from the commission to transport commodities, except those requiring special equipment by regular routes between Alliance and Crawford, between Alliance and Morrill, and to specified intermediate and off-route points. Appellee by this method of operation transported a shipment from Omaha loaded there early in the evening to and delivered it in Alliance the next afternoon. In December 1952, the schedule and routing of shipments from Omaha to Alliance were

changed by appellee, and its trucks from Omaha were routed direct to Alliance over highway 275 to its junction with highway 30, thence over that highway to its junction with highway 2, and thence over that highway to Alliance. Appellee by this procedure furnished next morning delivery at Alliance on freight from Omaha. The commission January 30, 1953, objected to the regular route operations of appellee over highway 2 and it was ordered to cease them. It thereafter routed its Omaha freight shipments to Alliance in accordance with route No. 1, as stated in its certificate, except it occasionally moved a shipment by truck to Alliance by highway 2 by virtue of its irregular route authority, but it continued to maintain the same schedule of operation, and thereby it gave next morning service on shipments from Omaha to Alliance. The arrival time of the trucks of appellee in Alliance from Omaha under the method of operating them as described above was between 7 and 7:30 the next morning, and delivery of shipments was made to consignees in Alliance when their places of business opened between 8:30 and 9 in the morning.

The use of highway 2 in moving shipments from Omaha to Alliance would be a mileage saving to appellee of about 39 miles each trip. The overall operating expense of appellee in 1951 was shown to have been about 51 cents a mile. On this basis appellee would save approximately $40 each day in operating one truck daily in and out of Alliance if it were permitted the alternate route it requests. Highway 2 carries a lighter load of traffic than highway 30. This is especially true in summer months during tourist travel. There are fewer towns on the former highway than there are on the latter and the towns have less population.

Appellee February 19, 1953, filed an application with the commission for authority to conduct operations as a common carrier by motor vehicle in intrastate commerce of commodities not requiring special equipment

between the junction of highway 19 and highway 26N north of Northport and the junction of highway 2 and highway 30 by way of highway 19 to its junction with highway 2, thence by that highway to its junction with highway 30 for operating convenience only, the operations to be conducted in either direction and serving no intermediate point. What the applicant seeks is permission to use highway 2 from its junction in Grand Island with highway 30 to Alliance without serving any intermediate point, without enlarging its service, or improving its competitive situation. The commission on November 10, 1953, granted the application of appellee and issued the authority therein sought. This appeal is by the persons doing business as Arrow Freight Lines of Broken Bow. It has intrastate operating rights to serve Alliance similar to those sought by appellee. The certificate of Arrow Freight Lines authorizes transportation of commodities, except those requiring special equipment, between Omaha and Alliance by way of highways 275, 30, and 2, serving all intermediate points west of Fremont.

The permission to appellee to use the alternate route would result in these advantages: A decrease of miles traveled to serve Alliance by a more direct route, and a shorter period of time for the trucks to be upon the highway; definite, substantial operating economies; more efficient transportation between Omaha and Alliance over a more convenient and safer route; and the transfer of the vehicles of appellee for a part of the distance from a congested highway to another that carries much less traffic. The use of the alternate route of appellee in moving a shipment from Omaha to Alliance would advance arrival time about 2 hours but this would not change the unloading time of the shipment to the consignee because the places of business in Alliance would be opened at the same time as if there was no saving in time required to make the trip. The service to the consignees at Alliance would be the same. Decreasing the

time required for a trip from Omaha to Alliance would conserve fuel, lessen depreciation, and reduce operating expenses of all kinds. Appellee has terminal facilities and makes delivery or deliveries in Alliance each day.

The commission found that the grant of authority asked by the carrier would permit a more economical operation by appellee, a saving of about $1,200 a month; that it would allow the use of a shorter route and a less congested and more convenient highway; that it would not result in appellee serving any new point or changing its service; and that the present and future public convenience and necessity required the grant of the alternate route authority applied for by appellee.

The position of appellants is that the alternate route authority given appellee has introduced a new and important competitive element in the motor vehicle transportation situation to their prejudice; that the order of the commission is without support of competent evidence; and that the order rests upon findings without integrity in the evidence. The specific unsoundness of the order of the commission, as appellants believe, is that there is no proof that common carrier transportation service of present certificated carriers was or would be inadequate to serve the public need in the area affected.

A certificate of convenience and necessity may not be granted and issued for original motor transportation service unless required by public need, and a certificate for another or enlarged motor transportation service will not be granted unless it is shown that the existing service is or will be insufficient. In re Application of Moritz, 153 Neb. 206, 43 N. W. 2d 603. The cases decided by this court concerning the subject of certificates of convenience and necessity have involved applications for service to new or additional points. The matter of granting alternate route authority to a certificated carrier has not previously engaged the consideration and conclusion of this court. The application, the subject of this proceeding, seeks only authority to im-

prove an existing service. It is not to provide shippers with a type of service essentially different from and superior to that which appellee was able to render over its authorized routes.

The commission is authorized to regulate the service of and to exercise general control over common carriers. In it is lodged great discretionary powers. The policy of the state as to motor carriers in intrastate commerce has been summarized by the Legislature to: "* * * regulate transportation by motor carriers in intrastate commerce upon the public highways of Nebraska in such manner as to recognize and preserve the inherent advantages of, and foster sound economic conditions in, such transportation and among such carriers, in the public interest; * * * promote adequate, economical and efficient service by motor carriers, * * * without unjust discrimination, undue preferences or advantages, and unfair or destructive competitive practices * * * cooperate with the Interstate Commerce Commission in the administration and enforcement of the federal 'Motor Carrier Act, 1935,' * * *." § 75-222, R. R. S. 1943.

It is a mandate of the Legislature that a common carrier shall obtain a certificate of convenience and necessity as a condition of its right to operate over the highways of the state. A prerequisite to the issuance of such a certificate is that it be shown "that the proposed service, to the extent to be authorized by the certificate, is or will be required by the present or future public convenience and necessity * * *." § 75-230, R. R. S. 1943. An identical provision is contained in the Federal Motor Carrier Act. 49 U. S. C. A., § 307, p. 96. It has on numerous occasions been interpreted and applied in cases involving applications for alternate route authority by the Interstate Commerce Commission and the federal courts.

In East Tex. Motor Freight Lines v. United States, 96 F. Supp. 424, the court said: "It must be borne in mind that this is an application for an alternative route.

The Congressional authority given to the Interstate Commerce Commission, 49 U. S. C. A., § 1, provides, among other things, for the impartial regulation of all modes of transportation, which are subject to the Act, to be so administered as to recognize and preserve the inherent advantages of each; to promote safe, adequate, economical and efficient service, and foster sound economic conditions in transportation among the several carriers. * * * It also must be borne in mind that public convenience and necessity may be found in operating economies and those things which contribute to expedition, public safety, and, efficiency in operation, because, while they benefit the carrier first, they indirectly contribute to the public safety and more reliable and expeditious and cheaper transportation. Such are safe foundations for a finding of public convenience and necessity."

In Aero Mayflower Transfer Co. v. United States, 95 F. Supp. 258, decided by a special federal court sitting in Omaha, it is said: "The Commission has often held that public convenience and necessity may be found in operating economies, Dixie Ohio Exp.—Extension of Operations, 30 M. C. C. 291; Schultz Common Carrier Application, 34 M. C. C. 629, and it is clear that such economies make available to the public cheaper and more reliable and expeditious transportation."

Clarke v. United States, 101 F. Supp. 587, quotes with approval the following from Cooper's Express, Inc., Extension—Alternate Route, 51 M. C. C. 411: "In determining these so-called alternate route applications, the essential issue presented is whether applicant is actually engaged in the transportation of traffic, in substantial volume, between the termini of the proposed alternate or direct route and is at present in a position effectively to compete with other carriers for such traffic, or whether the new route will enable applicant either to institute a new service not theretofore conducted, or to institute a service so different from that theretofore

provided as materially to alter the competitive situation to the injury of existing carriers. In the case of the former, we are justified in granting the authority sought solely upon proof that the proposed operation would result in operating economies, which, although primarily a benefit to the applicant, result in an indirect benefit to the public through the medium of more efficient service." It is also said in that case: "The second basic principle involved in this controversy is that if economies in operation are possible the public interest requires such economies. The public interest is not only in efficient service but is also in reasonable rates for that service. So, if the carrier is operating over an established route, but it appears that it can render the same service or a better service by a shorter or cheaper route, the public interest requires the more economical operation."

See, also, Interstate Common Carrier Council v. United States, 84 F. Supp. 414, affirmed, 338 U. S. 843, 70 S. Ct. 91, 94 L. Ed. 516; Dohrn Transfer Co. v. United States, 102 F. Supp. 169.

The view of the commission that the allowance of the alternate route to appellee was on the facts in this case in the public interest has the support of distinguished authority. In New York Central Securities Corp. v. United States, 287 U. S. 12, 53 S. Ct. 45, 77 L. Ed. 138, it is said: "The provisions now before us were among the additions made by Transportation Act, 1920, and the term 'public interest' as thus used is not a concept without ascertainable criteria, but has direct relation to adequacy of transportation service, to its essential conditions of economy and efficiency, and to appropriate provision and best use of transportation facilities, * * *." See, also, Texas v. United States, 292 U. S. 522, 54 S. Ct. 819, 78 L. Ed. 1402.

The order presented to this court for review was made by the commission in the exercise of its administrative and legislative authority. The function of this

court is to determine if there is proof to support it. Schmunk v. West Nebraska Express, Inc., *ante* p. 134, 65 N. W. 2d 386. The findings and order of the commission are sustained by substantial evidence. The order granting appellee alternate route authority is not arbitrary.

The order of the commission, the subject of this appeal, should be and it is affirmed.

AFFIRMED.