IN RE APPLICATION OF TRANSIT HOMES, INC.
TRANSIT HOMES, INC., ET AL., APPELLANTS AND CROSS-APPELLEES, V. NATIONAL TRAILER CONVOY, INC., ET AL., APPELLEES AND CROSS-APPELLANTS.
113 N. W. 2d 638

Filed March 2, 1962. No. 35062.

*Barney, Carter & Buchholz* and *Holtorf & Hansen,* for appellants.

*Nelson, Harding & Acklie, Donald E. Leonard,* and *Pilcher, Howard & Hickman,* for appellees.

Heard before MESSMORE, YEAGER, SPENCER, BOSLAUGH, and BROWER, JJ.

YEAGER, J.

To the extent necessary to state here, this proceeding was commenced by the filing by Transit Homes, Inc., a corporation, which will be referred to as Transit, of an application on May 16, 1960, with the Nebraska State Railway Commission for authority to operate as a motor carrier of property for hire in intrastate commerce as successor in interest under a transfer of a certificate held by Duane Alden Nikont of Gering, Nebraska. The certificate was one of public convenience and necessity

for the towing or hauling by truck of trailers or trailer homes with one authorized terminal, which was Gering, Nebraska. The certificate authorized transportation of house trailers over irregular routes throughout the state.

To this application separate protests by two parties were filed. One was Morgan Drive Away, Inc., which will be referred to as Morgan, which was engaged under a certificate in the same kind of activity in the State of Nebraska as Nikont. It was also operating under interstate authority. By its protest it alleged that it had a direct interest in the application of Transit, and specifically alleged that the transfer of the certificate would not be consistent with the public interest and that approval would unduly restrict competition.

By the other protest National Trailer Convoy, Inc., which will be referred to as National, alleged that it operates over irregular routes under an intrastate certificate of public convenience and necessity issued by the Nebraska State Railway Commission which are in part in the area of the Nikont operation. It also had interstate authority. It is therein declared that the territory is already adequately served and this will be a new and competitive service for which no need exists, and if there is additional need National is entitled to provide and afford that service. Further it is declared that the granting of the application will seriously impair the ability of National to conduct operations under its certificate and to maintain the quality and quantity of service being rendered and performed in the area.

A hearing was had before an examiner for the Nebraska State Railway Commission, which will be referred to as the commission, at which evidence bearing on the questions involved was adduced. This evidence together with the findings and recommendations of the examiner were filed with the commission.

Without stating in detail the findings and recommendations of the examiner it is stated here that he recommended that the application of Transit be granted.

To the recommendations of the examiner the objectors filed exceptions. The exceptions of National are eight in number. A summary of the first four is that the report is contrary to the evidence and law. The fifth is that it is arbitrary, unreasonable, and contrary to the evidence. The sixth is that it is contrary to the public interest and fails to consider sound economic conditions in the motor carrier industry. The seventh does not differ materially from the sixth, and the eighth is that there was refusal to consider evidence of dormancy and unfitness.

The exceptions of Morgan are 11 in number, but in their entirety they do not depart materially from the exceptions of National.

Thereafter, according to recital, the commission conducted a hearing and examined the evidence and the report of the examiner. On this basis it rendered an opinion with findings and an order in disposition of the controversy.

The findings are as follows:

"1. The exceptions to the Examiner's Report should be sustained and the application should be denied.

"2. The proposed Transfer would not be consistent with the public interest.

"3. Applicant is fit, willing and able properly to perform the service proposed.

"4. The certificate involved is not dormant but approval of the transfer would result in a new or different service or operation as to the territorial scope than that which the Commission intended when it granted application No. M-11102."

The order is as follows:

"IT IS THEREFORE ORDERED By the Nebraska State Railway Commission Application No. M-11177 of Transit Homes, Inc., Anderson, South Carolina be, and the same is hereby, denied."

It is from these findings and this order that Transit and Nikont have appealed. Morgan and National cross-

appealed from the portion of the findings relating to fitness and dormancy. As grounds for reversal the appellants' brief contains three assignments of error. The substance of the first is that the order denied the application for transfer of the certificate notwithstanding the evidence disclosed that full performance of every essential of transfer had been complied with by the transferor and the transferee. The second, in true substance, points to no particular error committed by the commission, but it directs attention to findings which were altogether favorable to the appellants. The third is that the commission was in error in finding that the approval of the transfer would result in a new or different service or operation as to territorial scope than that which the commission intended when it granted application No. M-11102, or the application which was the basis of the certificate of Nikont.

The first of the findings in and of itself requires no separate consideration herein. It is merely an overall conclusion upon the other findings. The third requires no extended discussion. This one is favorable to Transit. It is a finding that Transit is fit, willing, and able to perform the service proposed. The propriety of the refusal of the commission to approve the transfer depends upon whether or not there was a factual and legal basis for the second and fourth findings.

There is no substantial dispute as to the legal principles which must be regarded as controlling in situations such as this. One of these is that the burden is on an applicant for a certificate of public convenience and necessity to show that he is fit, willing, and able to perform the service he proposes; that he will conform to the provisions of the statute and the requirements, rules, and regulations properly promulgated by the commission; and that the proposed service is or will be required by the present or future public convenience and necessity. See, §§ 75-222 to 75-250, R. R. S. 1943; Preisendorf Transp., Inc. v. Herman Bros., Inc., 169 Neb. 693, 100

N. W. 2d 865; Abler v. Wheeler Transp. Service, Inc., 169 Neb. 728, 101 N. W. 2d 476.

Another of these rules is that where a certificate of public convenience and necessity is not dormant it may be transferred on approval of the Nebraska State Railway Commission under reasonable rules and regulations to be prescribed by it, if the transfer will be consistent with the public interest, if it will not unduly restrict competition, and if the transferee is fit, willing, and able to perform the service proposed. See Caudill v. Lysinger, 161 Neb. 235, 72 N. W. 2d 684.

A further rule is that the statute governing the transfer of certificates of public convenience and necessity is permissive in terms and not mandatory, and action of the Nebraska State Railway Commission in refusing a transfer will be sustained unless it appears that the refusal was unreasonable and arbitrary. See Caudill v. Lysinger, *supra.*

The term public interest which appears in these rules and the Motor Carrier Act means that which has a direct relation to adequacy of transportation service, to its essential conditions of economy and efficiency, and to appropriate provision for the best use of transportation facilities. See, West Nebraska Express v. Pirnie, 159 Neb. 353, 67 N. W. 2d 342; Omaha Transit Co. v. Briggs, 167 Neb. 703, 94 N. W. 2d 461.

Under pronouncement of this court it has been pointed out that although the transfer of a certificate of public convenience and necessity is permissive and not mandatory, a refusal to transfer will be regarded as unreasonable and arbitrary if under the facts a valid basis for denial is not disclosed. See Caudill v. Lysinger, *supra.*

Coming now to the facts as disclosed by the record in their relation to the findings of the commission it is pointed out that the commission found that the applicant was fit, willing, and able to perform the service proposed. It was also found that the certificate was not

dormant. These findings were fully sustained. There was no evidence having weight to the contrary. Necessity for review in this area does not appear. This conclusion disposes of that phase of the appeal and the cross-appeal, both unfavorably to Morgan and National.

As to the findings of the commission this leaves only the finding that the proposed transfer would not be consistent with the public interest, and the one that the transfer would result in a new or different service or operation as to the territorial scope than that which the commission intended when it granted the application for which transfer was sought. The latter of these two will be considered first.

It is deemed proper to say that if the certificate was clear and definite in its terms the only proper inference is that it expressed the full and true intention of the commission when it was granted. No party adduced the certificate in the record either by pleading or evidence. The transcript however, by recital, contains what appears to be its substance. There can be but little doubt, if any, of the correctness of the recital.

By recital it appears that the certificate granted to the holder the following:

"SERVICE AND ROUTE OR TERRITORY AUTHORIZED:

"New and used house trailers by winch or tow trucks between points and places in the State of Nebraska, over irregular routes.

"RESTRICTION:

"Terminals shall not be established and/or motor vehicle equipment stationed in any place other than Scottsbluff, Nebraska."

The terminal and point of station for motor vehicle equipment was changed after the date of original issue to Gering, Nebraska.

By this the parties under the evidence are in accord that the holder of the certificate was entitled to move house trailers in intrastate movements over any of the

highways in Nebraska with Gering as the terminal and the motor equipment station. No one contends that the language declares or implies any intent other than that expressed.

From this it appears that the intention of the commission was clear and clearly expressed, and that the finding relative to intention was without any recognizable basis.

It is pointed out here that Transit was not seeking by its application for transfer of the certificate to extend, enlarge, or otherwise change the grant of authority conferred by the certificate. It must be said therefore that this finding was without merit.

The question of whether or not a transfer of the certificate would be inconsistent with the public interest requires an examination into the facts disclosed and reasonable inferences to be drawn therefrom as they related particularly to public interest and its needs, and the involved competitive situations.

The evidence disclosed that Nikont held and was operating individually under the certificate in question since about January 1960. He operated under the name of D & D Trailer Towing. Prior thereto, from about June 1958, he operated under it in partnership with one Dale Benda. During his operation he had one truck which he was empowered to use for the purposes contemplated in intrastate commerce. He did the driving and had an agent or representative at his terminal. He operated through his terminal in the transportation of trailer homes to and from all points in Nebraska.

In case of transfer of the certificate the actual operation will not in anywise change. Nikont will retain ownership of the truck and it will be used for hire by Transit. Nikont will become an employee of Transit in the operation of the truck. The only effect of the transfer would be that ownership of the certificate and of the rights under it would pass to Transit which is a corporation with headquarters in Anderson, South Carolina,

having also interstate rights to operate as a carrier of house trailers in many of the United States.

The certificate in question is the only one of this character having a terminal in the western part of the State of Nebraska. There is a considerable amount of service such as is permissible under this certificate required in the western part of the state. For the most part the service required is in the western part of the state, but some movements are required from points west to points east and from points east to points west. Such movements have been made under this certificate, and they are in contemplation for the future.

The only conclusion of which the record is capable is that National and Morgan have the same kind and character of certificates as does Nikont. The only difference is that their terminals are in the eastern part of the state, with National at Lincoln and Morgan at Omaha. Each of these has interstate authority in a large number of states including Nebraska.

If the transfer of this certificate is granted the method and practices in operation would be the same as those employed by these two objectors. These two establish a terminal, hire a driver or drivers, rent a truck or trucks which may properly be used in intrastate commerce, and on that basis respond to calls and perform their service. The number of employees and the amount of equipment on hand by these for service might exceed at times that of Transit but the only real difference would be that Transit would operate from and within an area of need in western Nebraska, whereas the other two would operate from points some 400 miles distant. Nothing which would flow from this certificate and its declared intent, if it is transferred, would be taken away from National or Morgan. It is also true that the public interest generally would not be in anywise affected. Competition would remain the same. The rights of persons in the western part of the state desiring or requir-

ing this character of service would be the same as now exist.

With reference to public interest the objectors suggest in effect that a policing problem would be presented to the commission which should be regarded as contrary to the public interest. The suggestion is that Nikont has only an intrastate right whereas if the transfer is allowed the certificate would pass into the hands of a carrier having also interstate rights and, this being true, a burden would be imposed upon the commission to police to see that Transit did not violate the obligations of the certificate.

A sufficient answer to this is that this amounts to an attack on purely speculative motives rather than rights over which the commission has control. It may well be pointed out here as to this that, if the transfer is allowed, Transit and these objectors will be in identical situations since they would all have interstate authority in the State of Nebraska.

In the light of the record and what this court has said the conclusion reached is that in this case the denial of transfer of the certificate in question was unreasonable and arbitrary. The concluding paragraphs of Caudill v. Lysinger, *supra*, point out incidents for the determination of what is and is not unreasonable and arbitrary. The record here, analyzed in the light of the pattern there characterized, discloses the action of the commission in denying a transfer was unreasonable and arbitrary.

Accordingly the order of the commission denying a transfer is reversed.

REVERSED.

SIMMONS, C. J., participating on briefs.