SPARTA FOUNDRY CO. *v.* MICHIGAN PUBLIC UTILITIES COMMISSION.

1. Public Service—Public Utilities Commission—Authority—Statutes.

    The public utilities commission is an administrative body created by, and deriving all of its power and authority from, statute.

2. Same—Common Law.

    The public utilities commission has no common-law powers.

3. Same—Railroad Freight Rates—Statutes.

    In the fixing of reasonable railroad freight rates and charges the public utilities commission applies the statutory rule, its function being to ascertain and determine facts upon which the rule becomes operative (2 Comp. Laws 1929, §§ 11026, 11038).

4. Same—Prospective Operation of Commission Action.

    The *quasi*-legislative action of the public utilities commission in fixing railroad freight rates and charges generally operates prospectively only.

5. Same—Reparation.

    Duties of public utilities commission in matter of reparation are *quasi*-judicial in character.

6. Same—Appeal—Statutes.

    The right of appeal from action of the public utilities commission cannot be extended to cases not within the statute since the commission is entirely a creature of statute.

7. Same—Statutes—Object—Appeal.

    The apparent object and purpose of statutes creating the public utilities commission and prescribing its powers and duties was to create a special administrative tribunal to which was committed the final and conclusive determination of certain questions except insofar as the statutes granted an appeal.

8. Same—Appeal—Affirmative and Negative Orders—Reparation.

    Any common carrier or any other interested party may appeal from an affirmative order of the public utilities commission but no appeal lies from an order strictly negative in character such as denial of reparation (2 Comp. Laws 1929, § 11042).

9. SAME—INTRASTATE SHIPMENTS OF PIG IRON—REPARATION.

Latter portion of order of public utilities commission fixing future rate for shipment of pig iron between two intrastate points but refusing to award reparation as to shipments made under old rate *held*, not subject to review in Ingham circuit court in chancery, since statute providing for review by such court does not embrace appeals from commission's orders which are purely negative in character (2 Comp. Laws 1929, § 11042).

10. SAME—APPEAL—COMPULSION.

If the public utilities commission may be compelled to act after it has refused to do so, such action may not be required by way of an appeal.

11. SAME—STATUTES—INTERSTATE COMMERCE COMMISSION.

Statutes of Michigan are substantially similar to acts of congress creating the interstate commerce commission and prescribing its powers and duties so far as the right of review of a denial of reparation from a common carrier is concerned.

Appeal from Ingham; Carr (Leland W.), J. Submitted April 8, 1936. (Docket No. 18, Calendar No. 38,775.) Decided June 4, 1936.

Bill by Sparta Foundry Company, a Michigan corporation, against Michigan Public Utilities Commission, to establish a railroad rate and for an order awarding damages. Pere Marquette Railway Company, a Michigan corporation, and Detroit, Toledo & Ironton Railroad Company, a Delaware corporation, intervened as parties defendant. Bill dismissed. Plaintiff appeals. Affirmed.

*Williams, Stiles & Tubbs,* for plaintiff.

*David H. Crowley,* Attorney General, and *Edmund E. Shepherd,* Assistant Attorney General, for defendant.

*John C. Shields* and *J. C. Kauffman,* for intervening defendant Pere Marquette Railway Co.

*Wallace R. Middleton,* for intervening defendant Detroit, Toledo & Ironton Railroad Co.

Potter, J. In a proceeding before the Michigan public utilities commission, plaintiff complained of a rate on pig iron from Detroit and the Detroit area to Sparta, Michigan, alleging such rate was, and for the future would be, unreasonable to the extent it exceeded, or might exceed, $2.70 per ton of 2,240 pounds. Plaintiff also asked reparation on shipments made under the existing rate. The commission reduced the rate from $2.90 per ton to $2.70 per ton, but refused to award reparation to plaintiff on prior shipments. Plaintiff then filed a bill in the circuit court for the county of Ingham, in chancery, in the nature of an appeal to review the order of the commission. The defendant commission answered, and the Pere Marquette Railway Company and the Detroit, Toledo & Ironton Railroad Company asked leave to intervene, which, being granted, they severally answered. Whereupon the Michigan public utilities commission made a motion to dismiss the bill of complaint upon the ground the circuit court for the county of Ingham, in chancery, had no jurisdiction to review the order of the commission, and for other reasons. The trial court granted the motion of the commission to dismiss the bill of complaint, and plaintiff appeals.

The Michigan public utilities commission is an administrative body created by statute and the warrant for the exercise of all its power and authority must be found in statutory enactments. *Grand Rapids & Indiana Railway Co.* v. *Michigan Railroad Commission,* 183 Mich. 383. It has no common-law powers. *Taylor* v. *Michigan Public Utilities Commission,* 217 Mich. 400 (P. U. R. 1922 D, 198).

In the fixing of reasonable rates and charges for the movement of freight by railroad, it applies the statutory rule fixed by the legislature. Its function is to ascertain and determine the facts upon which the statutory rule becomes operative. Though not a purely legislative act, the fixing of rates upon the part of the Michigan public utilities commission is *quasi*-legislative in character and rates prescribed by it, like other legislative acts, generally operate prospectively only. *City of Traverse City* v. *Michigan Railroad Commission,* 202 Mich. 575 (P. U. R. 1918 F, 752).

In the matter of reparation, the duties of the commission are *quasi*-judicial in character and, in this case, the commission determined by the record before it that while the shipper was entitled to a reduction in the rate on pig iron in future shipments, it would not hold the collection of the prior and higher tariff rate on shipments moving thereunder was unlawful and that plaintiff could recover back from the carriers the difference between the rate in force when the shipments were made and the rate prescribed by the commission as reasonable and proper for subsequent shipments.

Being entirely a creature of statute, no appeal lies from the action of the commission except as prescribed by statute. *Echlin* v. *Canvasser,* 239 Mich. 116; *Sullivan* v. *Haug,* 82 Mich. 548 (10 L. R. A. 263); *Messenger* v. *Teagan,* 106 Mich. 654; *Wernik* v. *Wayne Circuit Judge,* 234 Mich. 224; *Davis* v. *Macomb Circuit Judge,* 239 Mich. 447. And this right of appeal cannot be extended to cases not within the statute. *Harvey* v. *St. Joseph Circuit Judge,* 63 Mich. 572; *Mitchell* v. *Bay Probate Judge,* 155 Mich. 550.

Our attention is called to no statute which specifically authorizes the appeal attempted by plaintiff to the circuit court for Ingham county, in chancery. It is contended, however, that viewing the statutes creating the Michigan public utilities commission and prescribing its powers and duties as a whole, it is apparent an appeal from all the orders of the commission was intended to be granted. The apparent object and purpose of these statutes was to create a special administrative tribunal to which was committed the determination of questions within the purview of these statutes, which determination should be final and conclusive except in those cases where the right of appeal was granted by statute.

The statute, 2 Comp. Laws 1929, § 11026, provides:

"If, upon such hearing, the commission shall decide that the rate or charge exacted is irregular or exorbitant it shall find what in its judgment would have been a reasonable rate or charge for the service complained of. If the rate or charge so found shall be less than the charge exacted and the commission shall determine that any party complainant is entitled to an award of damages under the provisions of this act for a violation thereof, the commission shall make an order authorizing and directing the carrier to pay the complainant the sum to which he is entitled on or before a day named."

Section 11038, 2 Comp. Laws 1929, provides for the investigation by the commission of complaints made against the rates and charges of common carriers, which statute provides:

"If, upon such investigation, the rate or rates, joint rate or rates, fares, charges or classifications, regulation, practice or service complained of shall be found to be unreasonable, inadequate or unjustly discriminatory, the commission shall have power to

and it shall determine and by order fix and order substituted therefor, such rate or rates, joint rate or rates, fares and charges, as is or are just and reasonable, and which shall be the maximum to be charged in the future.''

Any common carrier or any other party in interest may appeal from an affirmative order of the commission. The statute, 2 Comp. Laws 1929, § 11042, in relation to appeals provides:

''Any common carrier or other party in interest, being dissatisfied with any order of the commission fixing any rate or rates, fares, charges, classifications, joint rate or rates, or any order, fixing any regulations, practices or services, may within thirty days from the issuance of such order and notice thereof commence an action in the circuit court in chancery for the county of Ingham, against the commission as defendant to vacate and set aside any such order on the ground that the rate or rates, fares, charges, classifications, joint rate or rates fixed are unlawful or unreasonable, or that any such regulation, practice or service fixed in such order is unreasonable.''

Subsequent sections of the statute provide for practice and procedure on appeals.

There is no statute in this State which authorizes a review of an order of the kind here complained of. The statutes of this State are substantially similar to the acts of congress creating the interstate commerce commission and prescribing its powers and duties so far as the right of reparation from a common carrier is concerned. Appeals do not lie except as authorized by statute. They lie only from affirmative action on the part of the commission. It may be that in some cases where the commission has refused to act, action by it may be compelled, but this may

not be done by appeal. The order here is a denial of reparation. It is not within the language of the statute above quoted providing for appeals from the order of the commission. It is negative in character and is not one which may be appealed from.

In *Standard Oil Co. (Indiana)* v. *United States,* 283 U. S. 235 (51 Sup. Ct. 429), the analogous statute in relation to the negative orders of the interstate commerce commission was before the Supreme Court of the United States. It was there said:

"A negative order which denies relief without more compels nothing requiring enforcement, and contemplates no action susceptible of being stayed by an injunction or affected by a decree setting aside, annulling, or suspending the order.

"The question in the present case depends upon the correct interpretation and application of the second subdivision of the act conferring jurisdiction, referred to and quoted *supra;* and necessarily the district court was without jurisdiction under the settled construction of that provision by which the authority of the court is limited to the review of affirmative orders, with 'power to relieve parties in whole or in part from the duty of obedience to orders which are found to be illegal.' *Procter & Gamble Co.* v. *United States,* 225 U. S. 282, 292, 293 (32 Sup. Ct. 761); *Manufacturers Ry. Co.* v. *United States,* 246 U. S. 457, 483 (38 Sup. Ct. 383); *Piedmont & Nor. Ry. Co.* v. *United States,* 280 U. S. 469, 477 (50 Sup. Ct. 192)."

In *Baltimore & O. R. Co.* v. *Brady,* 288 U. S. 448 (53 Sup. Ct. 441), it is said:

"Section 16 (2) does not permit suit in the absence of an award, and if the commission denies him relief, a claimant is remediless. *Standard Oil Co. (Indiana)* v. *United States,* 283 U. S. 235 (51 Sup. Ct. 429). *Brady* v. *United States,* 283 U. S. 804 (51 Sup. Ct.

559). *Bartlesville Zinc Co.* v. *Mellon* (C. C. A.), 56 Fed. (2d) 154.''

In *Interstate Commerce Commission* v. *United States, ex rel. Campbell,* 289 U. S. 385 (53 Sup. Ct. 607), it is said:

''The respondent by its complaint to the commission invoked this dual jurisdiction, the administrative jurisdiction to prescribe a rule for the future (*Great Northern Railway Co.* v. *Merchants Elevator Co.,* 259 U. S. 285, 291 [42 Sup. Ct. 477]; *Baltimore & O. R. Co.* v. *Brady,* 288 U. S. 448 [53 Sup. Ct. 441]), and the judicial or *quasi*-judicial jurisdiction to give reparation for the past. *Baltimore & O. R. Co.* v. *Brady, supra.* In dismissing such a complaint, the commission speaks with finality. Its orders purely negative—negative in form and substance—are not subject to review by this court or any other. *Standard Oil Co. (Indiana)* v. *United States,* 283 U. S. 235 (51 Sup. Ct. 429); *Alton R. Co.* v. *United States,* 287 U. S. 229 (53 Sup. Ct. 124); *Procter & Gamble Co.* v. *United States,* 225 U. S. 282 (32 Sup. Ct. 761); *Baltimore & O. R. Co.* v. *Brady, supra.*''

We think the trial court arrived at a correct conclusion.

Decree of the trial court is affirmed, with costs.

North, C. J., and Fead, Wiest, Butzel, Bushnell, Edward M. Sharpe, and Toy, JJ., concurred.