IN RE APPLICATION OF BERNARD C. EFFENBERGER ET AL., DOING BUSINESS AS FORT CROOK BUS LINES. BERNARD C. EFFENBERGER ET AL., DOING BUSINESS AS FORT CROOK BUS LINES, ET AL., APPELLANTS, V. OMAHA & COUNCIL BLUFFS STREET RAILWAY COMPANY ET AL., APPELLEES.

33 N. W. 2d 296

Filed July 7, 1948. No. 32439.

*George E. Truman* and *Floersch & Floersch,* for appellants.

*Kennedy, Holland, DeLacy & Svoboda, J. A. C. Kennedy, Jr., Grenville P. North, Warren C. Schrempp, James P. Keenan, G. C. Holdrege, Edward F. Fogarty, Edward Sklenicka, James M. Paxson, Herbert M. Fitle,* and *Collins & Collins,* for appellees.

Heard before SIMMONS, C. J., PAINE, CARTER, MESSMORE, YEAGER, CHAPPELL, and WENKE, JJ.

CARTER, J.

This is an application by the operators of the Fort Crook Bus Lines for a certificate of public convenience and necessity authorizing an extension of service between Bellevue, Nebraska, and Fourteenth Street and Capitol Avenue, Omaha, Nebraska. The Nebraska State Railway Commission denied the application and the applicants have appealed.

The present operations of the Fort Crook Bus Lines, hereinafter called the bus lines, are substantially as follows: From Fort Crook a line is operated to Twenty-fourth and N Streets in Omaha on Highway No. 73-75. From Bellevue a line is operated to Twenty-fourth and N Streets by way of Highway No. 31 and Bellevue Boulevard. At Twenty-fourth and N Streets passengers must change to streetcars or busses of the Omaha & Council

Bluffs Street Railway Company, hereinafter called the street railway company. The proposed new service would route applicant's busses north on Thirteenth Street, from the point where Highway No. 31 and Highway No. 75 come together, to Fourteenth Street and Capitol Avenue in downtown Omaha.

The evidence shows that Bellevue had an approximate population of 1,100 people in 1941 and that it now has a population of 4,600. It is located about five miles from the city of Omaha. The distance to Thirteenth Street and Capitol Avenue in downtown Omaha is 12½ miles by way of Twenty-fourth and N Streets and nine and one-half miles by the proposed route. The present terminal of the bus lines at Twenty-fourth and N Streets is served by a streetcar line and a bus line insofar as downtown Omaha is concerned. There is evidence that the busses are often loaded before arriving at Twenty-fourth and N Streets to the inconvenience of the passengers unloaded at that point by the bus lines. There is much evidence in the record showing the necessity for better service to downtown Omaha from Bellevue and Fort Crook. The usual time in going from Bellevue to downtown Omaha by the means now provided is one hour and twenty minutes. Applicant proposes to provide this service by a thirty-five-minute schedule. The proposed route is over the least congested streets which would permit a faster time schedule and a maximum of safety. The evidence shows that the people of Bellevue and Fort Crook, the government employees and military personnel at the fort, and the employees of Offutt Field require better service to and from downtown Omaha than they are now receiving. We will not undertake a review of all the evidence which supports this conclusion.

The street railway company produced evidence to the effect that there was no public interest involved which required any action on the part of the railway commission. It contends also that the service rendered

by it at Twenty-fourth and N Streets to downtown Omaha is adequate and as efficient as that available to the citizens of Omaha generally. There is evidence in the record that the railway commission has valued the transportation system of the street railway company at $10,483,135. The rates permitted to be charged are based on this investment and the number of passengers hauled. The margin is so narrow that any material reduction of revenue would cause the company to operate at a loss. This result would almost certainly come about if this application is granted and other similar bus lines saw fit to apply for and obtain similar privileges at the hands of the commission. It is the contention of the street railway company that if additional service is required, it, and not the applicant, should have the opportunity to provide it. This it offers to do if the railway commission concludes that the public interest requires it.

The evidence of the city of Omaha objecting to the allowance of the application is based upon the added congestion which would accrue in the downtown section of the city by having an additional number of busses operating there, and the consequent loss of taxes resulting from a loss of revenue by the streetcar company. We do not think the evidence produced by the city of Omaha is sufficient to warrant the denial of the application, assuming that there is a public necessity for granting it. The prospective loss of tax income, or the possibility of adding to the traffic problem, are not of themselves sufficient to defeat such an application if there is a public need for the proposed service. Other interveners appearing in the case raise no objections which are not covered by the position taken by the street railway company. Consequently, the case can be determined upon the issues raised by the application and the objections made thereto by the street railway company.

The city of Bellevue, Offutt Field, and Fort Crook,

under the facts shown, require service which is suburban in nature, although each is outside the corporate limits of the city of Omaha. They are within the metropolitan area of Omaha. The public interest involved is not confined to the city of Omaha but is a matter which is independent of arbitrary geographical limits. Municipal boundaries play a part in determining who should be permitted or required to perform common carrier service, but they are unimportant in determining public convenience and necessity.

Under the existing plan of operation the bus lines carry their passengers to Twenty-fourth and N Streets, where they are required to transfer to the streetcar or bus service provided by the street railway company. This interlined service operates without the benefit of an integrated schedule assuring a prompt continuance of the trip. The evidence shows that Twenty-fourth and N Street is not a terminal point for the busses and streetcars of the street railway company. The result is that loaded cars and busses come into this point during peak periods, causing delay in the movement of passengers unloading from the applicant's busses. The fact that a transfer is required is not of itself a controlling factor. Transfers are necessary in moving the public in heavily populated points. That a direct service from these outlying districts to downtown Omaha on a faster schedule and without the necessity of transferring would be much more convenient for the users of the service must be conceded. The questions submitted to us by this appeal, however, go to the powers of the railway commission and the rights of the various common carriers involved.

The Nebraska State Railway Commission has original jurisdiction and the sole power to grant, amend, deny, revoke, or transfer common carrier certificates of convenience and necessity. Moritz v. Nebraska State Railway Commission, 147 Neb. 400, 23 N. W. 2d 545. Courts are without authority to interfere with the findings and orders of the railway commission, except where it ex-

ceeds its jurisdiction or acts arbitrarily. Publix Cars, Inc., v. Yellow Cab & Baggage Co., 130 Neb. 401, 265 N. W. 234. The purpose of commission control of common carriers is to secure adequate and sustained service for the public at a minimum cost and to protect investments already made in accomplishing such purposes. Competition which results in a duplicated service and a consequent reduction in revenue is economically wasteful and tends toward high fares and inefficient service. Certain duties are imposed upon established carriers to provide service to all the public. This requires service to be rendered where it is unprofitable as well as where it is profitable. Competition is not ordinarily permitted where the business is desirable, leaving the burden of supplying service to the undesirable areas to the established carrier. The determination of these questions rests with the railway commission, and its findings and orders will not be interfered with on appeal if any reasonable basis exists upon which they can be supported. Furstenberg v. Omaha & C. B. Street Ry. Co., 132 Neb. 562, 272 N. W. 756; Publix Cars, Inc., v. Yellow Cab & Baggage Co., *supra*.

We think the evidence shows that the service rendered to the places here involved fails to meet the standards the public has a right to expect. The improvement of the service is a matter peculiarly within the control of the railway commission. We think the evidence shows that the street railway company has the means, by operating cooperatively with the applicant, to provide proper transportation facilities to the inhabitants of Bellevue, Offutt Field, and Fort Crook. This it has volunteered to do if the railway commission deems it necessary. This being true, the order of the railway commission denying the application to extend the facilities of the Fort Crook Bus Lines into downtown Omaha is not an arbitrary one. Furstenberg v. Omaha & C. B. Street Ry. Co., *supra;* Moritz v. Nebraska State Railway Commission, *supra.* The evidence indicates that adequate service

can be provided by the established carrier. Clearly, it has the first right to so do in the manner and by the means which the railway commission might prescribe. If the established carrier failed in its duty or refused to comply with the orders of the commission with respect thereto, the railway commission might then be obliged to favorably consider applications of others to perform the service. The whole theory of commission control is to eliminate unbridled competition between common carriers when it will result in higher costs to the public. Competitive routes will ordinarily be authorized only where the existing carrier refuses or has failed to provide adequate service upon the order of the railway commission. Where the evidence does not show that such a situation exists, the established carrier may properly resist invasion of its field before the commission. An order of the commission sustaining the objections of the established carrier under such circumstances is not arbitrary. Consequently, it is a lawful order.

This court has no power to regulate public utilities. Its function on appeal is limited to an examination of the jurisdiction of the railway commission over the subject matter and a determination of whether or not the order made by the railway commission is reasonable as distinguished from arbitrary action. The policy or wisdom of its action cannot be reviewed by the courts where the foregoing requirements to lawful action are found to exist.

We are of the opinion that the action of the railway commission in the present case has evidentiary support in the record and constitutes a proper exercise of the powers vested in the railway commission by the Constitution and laws of this state. Under such circumstances this court is without authority to interfere with the result.

AFFIRMED.