In re Application of Northwestern Bell Telephone
Company, Omaha, Nebraska.
Northwestern Bell Telephone Company, appellant, v.
Pleasant Valley Telephone Company et al., appellees,
Alfred B. Kopf et al., interveners-appellants.
150 N. W. 2d 922

Filed May 26, 1967.   No. 36501.

Edward Sklenicka, Walter D. James, Jr., and William K. Schaphorst, for appellant.

Smith & Smith, for interveners-appellants.

Beatty & Morgan, Leonard P. Vyhnalek, and William S. Padley, for appellees.

Heard before White, C. J., Carter, Spencer, Boslaugh, Smith, McCown, and Newton, JJ.

Carter, J.

The Northwestern Bell Telephone Company filed its application with the Nebraska State Railway Commission

pursuant to section 75-604, R. S. Supp., 1965, for a certificate of convenience and necessity to construct and extend telephone lines and cables into a portion of the Oconto exchange area of the Northeastern Telephone Company and a portion of the Cozad exchange area of the Cozad Telephone Company. The Northeastern Telephone Company and Cozad Telephone Company filed their relinquishments with the commission to the areas contained in the application. These areas are shown on a map in evidence, exhibit No. 11, and are not in dispute. Nineteen of twenty-one possible subscribers in the area sought to be served by Northwestern Bell intervened in support of the application. Albert A. German, a resident of the Cozad exchange area who resides approximately 2 miles west of the area described in the application, protested the grant of the application. The Pleasant Valley Telephone Company, a farmer-switcher telephone company within the area of Northeastern's Oconto exchange, opposed the granting of the application. After a hearing, the commission found that the grant of the application was not in the public interest and denied it. Northwestern Bell and the intervening potential users of the proposed service have appealed.

This litigation appears to be a continuance of differences of long standing as to the adequacy of telephone service in the area. Some phases of the problem were before this court in Kopf v. Public Telephone Co., 173 Neb. 96, 112 N. W. 2d 521. The Public Telephone Company in that case is the former name of what is now the Northeastern Telephone Company. The evidence generally is to the effect that the area included in the application has not been afforded adequate telephone service over the years for various reasons which are of importance here.

It is provided by section 75-604, R. S. Supp., 1965, that no person or corporation shall construct or extend a new telephone line into the territory of another telephone company without applying for and receiving a

certificate of convenience and necessity from the commission. Before granting such a certificate, the commission must find that the territory to be served is not receiving reasonably adequate telephone service, that the territory will not within a reasonable time receive reasonably adequate telephone service from the telephone company serving the territory, or that the application is agreeable to the subscribers and both telephone companies involved, will not create a duplication of facilities, and is in the interest of the public and the parties requiring telephone service.

The evidence shows that Northwestern Bell has a telephone exchange and an exchange area in and around Lexington, Nebraska. Immediately north and adjoining the Lexington exchange area lies the territory described in the application which was relinquished by the Cozad Telephone Company. North of this area lies the territory relinquished by Northeastern from its Oconto exchange area.

The Pleasant Valley Telephone Company is a farmer-owned switcher telephone line having no telephone exchange. It obtains switching service for its member-subscribers from the Oconto exchange of the Northeastern Telephone Company. Pleasant Valley was organized about 1907. The adequacy of the telephone service provided by Pleasant Valley was a questionable quality, at least until 1961. In 1961, the members paid in $650 each for rehabilitating its facilities. It put in new poles, constructed a new overhead two-wire line, and installed dial telephones. The evidence is conflicting as to the adequacy of the service provided even though it was much better than before. In any event, the residents in the involved area refused to pay for memberships in Pleasant Valley or to use the service into the Oconto exchange. For years no resident in the controversial area used the telephone service of Pleasant Valley. At the time of the hearing before the commission, Pleasant Valley had but 14 users from whom it ob-

tained but $1 per month for operation, maintenance, and depreciation. It was dependent upon members for making repairs, although a company repairman at Callaway made repairs when he had the time to do it.

The residents of the area relinquished by Northeastern are practically unanimous in their desire for telephone service into Lexington. They testify that their business, church, school, social, and professional needs are transacted in Lexington and that they do not want and will not accept the service of Pleasant Valley into the Oconto exchange. The evidence makes it clear that Pleasant Valley renders no service in the area applied for and that it has no potential users in the territory. We point out here, that when the commission required the filing of maps showing telephone company service areas, Northeastern showed the territory which it relinquished in the present proceeding to be a part of its service area, but it has never rendered any telephone service in such area, at least not in recent years. The 10 potential users of telephone service in the area relinquished by Northeastern signed an affidavit in which they state that they are agreeable to becoming a part of Northwestern Bell's Lexington exchange area. Pleasant Valley is not a common carrier and is not subject to the rules and regulations of the commission. It is clear that it renders no service in the area and that it has no potential users there. We fail to see where the granting of a certificate of convenience and necessity should in any manner be in derogation of the rights of Pleasant Valley. The cost of a share of stock in Pleasant Valley, even at its depreciated value, its poor maintenance and operation which is beyond the control of the commission, and its connection with the Oconto exchange of Northeastern which is not a desired service by potential users, lends force to its inadequacy for the residents of the questioned area. The grant of the certificate appears to be in the public interest and in the interest of the parties re-

quiring telephone service, and will provide no duplication of service.

The area relinquished by the Cozad Telephone Company has been served, at least in part, by the Buffalo Mutual Telephone Company. Since 1909, it has operated as a mutual unincorporated telephone company. It operates a switcher line, obtaining switcher service from the Cozad exchange of the Cozad Telephone Company. On September 14, 1965, the member-shareholders of Buffalo Mutual voted to dissolve the company and cease operations when and if Northwestern Bell's application for a certificate was granted and telephone service was made available by it in the area relinquished by the Cozad Telephone Company. The telephone service provided by Buffalo Mutual was shown to be unreliable and inadequate. There are 11 potential users in the Buffalo Mutual area. Nine of these users signed an affidavit that they were agreeable to Northwestern Bell's taking a part of Buffalo Mutual's service area into its Lexington station exchange area. Two potential users, H. H. Neben and School District No. 44, did not sign the affidavit. The evidence does show that H. H. Neben has paid the advance construction charges to Northwestern Bell in order to obtain its service when available, a clear indication of his desire for such service. School District No. 44 is in the same situation as H. H. Neben and must be considered as desiring the service of Northwestern Bell when it is made available.

Albert A. German protested the grant of the application and filed a brief in support of his protest on this appeal. German is a rancher who resides approximately 2 miles west of the area proposed to be served by Northwestern Bell. He is presently served by Buffalo Mutual which contracts for its switcher service from the Cozad Telephone Company. It is the contention of German that if the application of Northwestern Bell is granted and upon the dissolution of Buffalo Mutual when service is provided by Northwestern Bell, he will have no

means of obtaining telephone service from any telephone service supplier. There is evidence in the record, however, that he can obtain service at additional cost, which German deems excessive. There is evidence in the record that Cozad Telephone Company has refused to take over the Buffalo Mutual switcher lines and render telephone service to its subscribers because it is not economically feasible to do so.

It is the contention of German that the grant of the application would be against the public interest in that it would result in his being deprived of telephone service. It must be pointed out that German resides 2 miles west of the area covered by Northwestern Bell's application. The difficulty in which German finds himself results from the dissolution of Buffalo Mutual, a farmer-switcher line over which the commission has no regulatory control. We cannot say that the probable loss of telephone service by German involves a matter of such public interest as to defeat the application and thereby prevent the residents of the area covered by the application from receiving adequate telephone service.

A telephone company must obtain a certificate of convenience and necessity as provided by section 75-604, R. S. Supp., 1965, before invading the territory of another company. Sherdon v. American Communication Co., 178 Neb. 454, 134 N. W. 2d 42. The exchange area of a telephone company includes all subscribers whether over company-owned lines or switcher lines. In order to obtain a certificate of convenience and necessity to invade the service area of another telephone company, the applicant must establish and the commission must find compliance with section 75-604, R. S. Supp., 1965.

The evidence shows that the area covered by the application is not receiving or about to receive reasonably adequate telephone service. The service areas invaded by the application have been relinquished by the telephone companies previously claiming the area. The record shows that a great majority of the subscribers, if

not all, are agreeable to the changes in service areas which will be brought about by the grant of the application. A public need for the service is clearly shown. A duplication of telephone facilities will not result. We think the evidence establishes compliance with section 75-604, R. S. Supp., 1965.

While it is true that the granting of a certificate of convenience and necessity under section 75-604, R. S. Supp., 1965, is lodged with the commission, a refusal to grant such a certificate when supported by the evidence and no basis exists for its denial will be regarded as unreasonable and arbitrary. Transit Homes, Inc. v. National Trailer Convoy, Inc., 173 Neb. 391, 113 N. W. 2d 638. When a public utility files an application for a certificate of convenience and necessity, the commission may not make a whimsical disposition of the matter, but must dispose of it on the evidence. And where the evidence clearly supports the interests of the people involved and the public interest as well, and no legal basis for its denial is pointed out, the denial of the application is arbitrary and capricious.

In Kopf v. Public Telephone Co., *supra,* the potential users of telephone service in this same area applied to the commission for the obtaining of adequate telephone service, which application the commission granted. On appeal to this court, we determined that potential users of telephone service were not proper applicants and the commission had no authority to require a common carrier to extend its service beyond its established service area into an area not previously served. In the case before us, the same situation as was then before the commission exists, except that defects in the previous litigation have been removed by providing a proper applicant and the obtaining of relinquishments from those companies to whose service areas the territory was formerly attached. The rights of the parties, and the public interest as well, is no different now than it was in the case of Kopf v. Public Telephone Co., *supra.* On the merits of the two

cases, an identical result is called for and an opposite result is not readily explainable.

There is some contention made in the record and briefs that the relinquishments of territory from the service areas of the Northeastern Telephone and Cozad Telephone companies was the result of coercion and fraud. In this respect there is some evidence that the relinquishments were obtained under a threat of legislation if adequate telephone service could not be provided the residents of the area under existing laws and the regulations of the commission. Suffice it to say that coercion and fraud are not asserted by the grantors of the relinquishments. In fact, they assert their validity and willingness to comply with them on the hearing before the commission. Under such circumstances Pleasant Valley and German are in no position to complain of coercion and fraud upon the parties who do not assert it and who in fact desire the results flowing from the relinquishments.

We think the evidence shows all the essential facts to support the grant of the certificate. It was the duty of the commission under the evidence to grant the certificate, and its action in denying the application was arbitrary and unreasonable. The order of the commission is therefore reversed.

REVERSED.